(133 Só. 16)

## BLAKENEY v. ALABAMA POWER CO.

### 1 Div. 619.

Supreme Court of Alabama.
March 5, 1931.

Harry T. Smith & Caffey, of Mobile, for appellant.

396

Inge, Stallworth & Inge, of Mobile, for appellee.

BOULDIN, J.

The suit is by a father to recover damages for the death of his minor son under the homicide act (Code 1923, § 5696).

George H. Blakeney, Jr., 12 years of age, while playing on the premises of Mrs. Brunson in Mobile August 7, 1929, went under the residence to recover a ball, and was there electrocuted.

His death is charged to the negligence of defendant, in that, while under contract to supply the residence with electric current of low voltage for domestic purposes, a current not dangerous to human life, the wires on said premises were negligently charged with a current of voltage far in excess of that required or proper for the service, and such as was dangerous to persons coming in contact therewith, and the deceased, coming in contact with said wires, was killed.

In actions of this kind the matter of location or place should appear in the complaint, in so far as necessary to show a duty of care toward the injured party. Birmingham Ry. L. & P. Co. v. Cockrum, 179 Ala. 372, 60 So. 304; American Ry. Express Co. v. Reid, 216 Ala. 479, 113 So. 507. In count 3 it

was averred merely that the child was playing on the premises of Mrs. Brunson.

The demurrer, sustained by the trial court, raised the point that, for aught appearing, the child may have been climbing a pole carrying the service wire, and so came in contact therewith. Whether defendant would be liable for negligently overcharging the wire in such event, it is not necessary to decide.

Amended count 3, on which the case was tried, averred the facts showing the place and the occasion of the child's coming into contact with the current as appears in the undisputed evidence. This count cast no additional or different burden upon the plaintiff.

■ Sustaining a demurrer to original count 3 was therefore harmless, as we have often declared.

The same rule applies in requiring a definite averment that the alleged negligence proximately caused the injury. True, the original count was of that class wherein the direct relation of cause and effect was shown by the facts averred, and no further averment of proximate cause was essential. But the very reason why it was sufficient is that it charged proximate cause, and the express averment in the amended count added nothing to plaintiff's burden.

There was no direct evidence of any excess voltage on the service wires. Plaintiff's case was rested upon evidence tending to show the ordinary domestic current of 120 volts, or thereabout, is insufficient to produce death, or to inflict a severe and extensive burn, such as appeared on the lower leg of deceased. Other evidence of contact appeared about the neck.

Other evidence tended to show some one went up the pole to the transformer soon after the accident, and before the inspection made by defendant. Defendant's evidence denies any employee of defendant did so.

The plaintiff qualified from experience as a radio expert, testified to experiences with such current, and expressed the opinion that it was not strong enough to kill. On cross-examination, after stating, "I did not say that 110 to 120 volts would never kill; I don't know," he was asked, "Isn't that the general opinion of well informed electricians?"

■ There was no error in allowing this question. It went to the extent of the witness' qualifications as an expert, and so affecting the weight of his testimony. One may be qualified to testify as an expert, but a knowledge of the general opinion among experts of his class, or a want of such knowledge, may be drawn out on cross-examination, as going to the value of his opinion.

Evidence for defendant was directed, first, to the voltage in fact carried by the wires at the time; and, second, to the possibility and probability of the ordinary house current causing death under certain conditions.

The witness F. S. Keeler qualified by technical schooling and actual experience as an expert, and as superintendent of the Mobile plant having personal knowledge of the plant and equipment. He further testified to a detailed inspection, examination, and tests with volt meter to ascertain what voltage was on the wires. He was asked, on direct examination, "What was the extreme current or voltage that could be received on those wires?" He answered, "120 volts."

Appellant's objections raised the point that the question calls for expert opinion not based upon facts shown to be known to the witness, nor hypothecated upon given facts in evidence.

■ The general rule is declared that, where an expert opinion is called for based upon his own knowledge of the facts, the witness should first state the facts, then his opinion or conclusion. If not on his knowledge, then the question should be hypothetical, based on facts in evidence. Brown v. Mobile Electric Co., 207 Ala. 62, 91 So. 802. This means, of course, the special facts of the case, not the technical facts which qualify as an expert.

■ Not all the details of fact testified to by Mr. Keeler had been drawn out at the time of the above question. Their subsequent introduction, if sufficient as a whole, would cure any error in the admission of such testimony. We think the knowledge disclosed in his entire examination qualified to give the opinion complained of.

■ Shown to have the required technical knowledge of the principles of the volt meter and practical experience with the one used, the witness was qualified to state that it was accurate and correct in its measurements, that it operates constantly, uniformly, and accurately. Such matters are clearly within the realm of expert opinion. Briggs v. Birmingham Ry. Light & Power Co., 194 Ala. 273, 69 So. 926; Raymond v. Pointer, 220 Ala. 593, 127 So. 153.

■■ The volt meter record introduced in evidence (a dark circular disk showing by appropriate tracings and figures the continuous voltage readings for each twenty-four hours) was subject to explanation by one familiar therewith, and the witness was properly permitted to state the voltage shown thereon at a given hour, and the minimum and maximum voltage during the period recorded. Demopolis Tel. Co. v. Hood, 212 Ala. 216, 102 So. 35.

■ The evidence tended to show that, if the transformer was not functioning properly, several different effects would follow—the effect on the transformer, on service lines, on house fixtures, customers' meters, etc.—and

to show personal inspection along these lines by Mr. Keeler. His knowledge of the inside condition of the transformer was not limited to the report of the lineman who climbed the pole, while the superintendent remained on the ground. There was no error in refusing to exclude his opinion evidence that the transformer was in good condition inside.

Upon proof that Da Costa's Modern Surgery is a standard and authoritative work, certain statements therein were introduced touching the voltage which may produce a fatal shock. Among these quotations was this: "Spitzger points out that in one case death followed a shock of 65 volts and others have survived shocks of many thousand volts."

■ The objection is that the quotation itself shows it is hearsay merely, and not shown to come from good authority. Such objection misconceives the grounds on wh'ch the published opinions of standard authors are admitted. The mere fact that he fortifies his views by quotations, or by references to the statements of others, does not render such quotations or reference inadmissible as hearsay. The author's own words are hearsay in the sense that they are unsworn declarations of a third person. His standing as recognized authority gives sanction to his own statements and such as he may adopt from others and incorporate as part of his views.

■ A witness who, as a sheet metal worker, is shown to have experience with electric current every day for years, and frequent shock from contacts therewith, was competent to testify as an expert whether a current of 120 volts will kill a human being.

■ A witness qualified by training and experience to testify as an expert in his business may be questioned as to the mechanical devices of such business. The extent of his expert knowledge on any given line may be tested on cross-examination. The trial court must be accorded some discretion, and will not be held in error for failure to require a new qualification of the witness touching each subject of inquiry.

■ Many assignments of error may be disposed of with these general observations. For example, a witness qualified as an expert upon the effect of electric current on the human body may testify touching the effect of different contacts, accidental or intentional, temporary or prolonged; the effect of contact near the brain, the effect of dampness of the ground or other contact as a conductor, the effect of age and size, sickness or fatigue. All these may be considered as entering into the equation in the case in hand.

■ Dr. Benedict, chief of defendant's medical staff, having testified on cross-exam-

ination that he had been a witness once or twice a year since 1916, was asked: "During that whole time, did you ever testify that a man was injured by one of your high tensioned currents?"

Objection was properly sustained. The evidence called for could shed no light on the credibility of the witness without going into the former cases.

■■ Charge 6 for defendant was given without error. There is no quest'on that the current carried to the house wiring on the outside of the house was of the same voltage as that carried under the house and into the house. While defendant's wires did not enter the house, the meaning of the charge is reasonably apparent. If deemed misleading, an explanatory charge should have been requested. The same may be said of defendant's given charges 14 and 16.

■■ Charge 11 for defendant was also properly given. Plaintiff's view that the electrocution of the child made a prima facie case of liability under the doctrine of res ipsa loquitur is untenable, and needs no special comment.

■ For like reason charge 12 was properly given for defendant.

Among the grounds of motion for new trial was misconduct on the part of the juror Hugo Proskauer. The evidence of Sam O. Browne, assistant clerk of the court, was this:

"Just after the evidence had been closed the jury were fixing to go to dinner. One of the jurors, Huge Proskauer walked into the Clerk's office. I was in conversation with Mr. Smith, the Clerk of the Court, checking a docket, and another juror walked in the door. I did not know this other juror. I do not remember him, but he said to Hugo:

" 'Hugo, we are going to be here for a long spell.'

"I said:

" 'Yes, you won't eat dinner at home today or at the Elks either.'

"Proskauer said:

" 'I, personally won't be here for a long time, but, I do not see why Mr. Smith brought this suit. He has not brought any evidence against the Alabama Power Company.'

"That was before the argument, and the jury was fixing to go to dinner. The bailiff had called them to take them out to dinner. This conversation took place in the office of the Clerk of the Court and not in the jury room. The only jurors present were Proskauer and the one he was talking to."

The impropriety of such discussion of the pending case by the juror is obvious. Wheth-

er special instructions had been given not to discuss the case outside the jury room does not appear.

Tampering with the jury by the parties or their representatives is such an invasion of substantial right that no further injury need appear.

But misconduct of a juror should indicate bias or corruption in the performance of duty, or the circumstances should indicate that his misconduct has influenced the verdict rendered. The circumstances calling forth the juror's remarks, including time and place, do not indicate to us a corrupt intent to influence a fellow juror. Whether the statement made touching the state of the evidence indicated bias, prejudice, unwillingness to consider argument or instructions to follow turns, in some measure, upon the real state of the evidence on which the juror was commenting.

While we consider the case one for the jury, the evidence for and against the contention that an excessive current was going over the wires, including all reasonable inferences, was such that, in our opinion, the trior of fact could honestly believe that no evidence had been produced against defendant which would warrant a verdict, the question the juror had in mind.

Indulging the presumption which should always be indulged against fraud, except in cases where the relation of parties is a factor, we could not say, in view of the holding of the trial court, that the remark was more than an untimely expression of the juror's views.

Cases relied upon by appellant, each dealing with the facts of that case, serve to illustrate. We do not consider them at variance with our conclusion in this case. We cite them without detailed comment. 46 C. J. p. 140, § 98; Ewer's Adm'r v. National Imp. Co. (C. C.) 63 F. 562; Pool, Adm'r., v. C., B. & Q. R. R. Co. (C. C.) 6 F. 844; Jewsbury v. Sperry, 85 Ill. 56; York v. Wyman, 115 Me. 353, 98 A. 1024, L. R. A. 1917B, 246; Wightman v. Butler County, 83 Iowa, 691, 49 N. W. 1041; Cooper v. Carr, 161 Mich. 405, 126 N. W. 468.

The action of the trial court on objectionable argument was favorable to appellant. No further request was made, and no exception taken, but a reply argument made to the jury. The rule of Cross v. State, 68 Ala. 484, governs.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.