292 So.2d 647

**Evelyn Miller HAGLER et al.**

**v.**

**Carol Diane Smith GILLILAND.**

**SC 401.**

Supreme Court of Alabama.

April 4, 1974.

Ted R. Coggin, Gadsden, for appellants.

Robert H. King, Gadsden, for appellee.

**264**

MADDOX, Justice.

Plaintiff's personal injury action, arising out of an automobile accident, resulted in a $20,000 verdict in her favor. Defendant appeals, arguing one point, that the trial court erred in permitting an "expert" witness to testify regarding the plaintiff's "loss of employability."

Plaintiff went to see John Newman (the "expert" witness), manager of the local Alabama State Employment Service, for the stated purpose of "measuring plaintiff's loss of employability in the labor market." During the meeting, Newman acquired a "history" from the plaintiff which consisted of background information, facts about the accident, and a description of her complaints and "physical condition." Based on this, and a report from a medical doctor which had been forwarded to him along with a letter from the plaintiff's attorney, Newman made an evaluation as to the plaintiff's "permanent loss of employability" in the labor market resulting from "permanent injuries" arising out of the automobile accident. Over objection of the defendant, he was permitted to testify that, in his opinion, the plaintiff was one hundred percent unemployable in heavy industry and twenty-five to thirty percent unemployable otherwise.

Appellant argues that Newman's opinion was based on hearsay information obtained outside the record and was inadmissible.

In Unexcelled Manufacturing Corp. v. Ragland, 52 Ala.App. 57, 289 So.2d 626 (1974), the Court of Civil Appeals considered the testimony of the same expert (Newman), but in a workmen's compensation case. There, the Court of Civil Appeals said:

"As we view Mr. Newman's entire testimony in context, it related to the appellee's employability or, put another way, his decreased earning capacity. The conclusions of Mr. Newman were based, as set out in the record, on his personal observations, personal interview and knowledge of job availability in the local job market through years of experience in the employment service of the State of Alabama. To allow such testimony into evidence is, to this court, permissible."

■ The question of whether or not a particular witness will be allowed to testify as an expert is largely discretionary with the trial court, whose discretion will not be disturbed on appeal except for abuse. Baggett v. Allen, 273 Ala. 164, 137 So.2d 37 (1962); Johnson v. Battles, 255 Ala. 624, 52 So.2d 702 (1951).

■ The trial court's discretion is limited to the qualification of the expert. The admissibility of expert opinion evidence is governed by the rule that such evidence should not be admitted unless it is clear that the jurors themselves are not capable, from want of experience or knowledge of the subject, to draw correct conclusions from the facts proved. It is not admissible on matters of common knowledge. Alabama Great Southern R. R. v. Bishop, 265 Ala. 118, 89 So.2d 738 (1956).

The subject of employment availability for persons who suffer from a physical or mental impairment is one upon which jurors, for want of knowledge or experience of the subject matter, might be unable to draw correct conclusions from the facts proved. Hence, expert opinions in this area could be helpful.

■ Here, there was proof by the plaintiff that she experienced pain. She stated she suffered memory loss. Her personal doctor thought she had some disability. A court appointed doctor who examined her on one occasion for less than thirty minutes disagreed. He thought she had no permanent disability. Consequently, there was a difference in the testimony by the medical experts. Appellant relies strongly on a New York case, Nazzaro v. Angelilli, 217 App.Div. 415, 216 N.Y.S. 721 (1926). There, the New York court did hold that opinion testimony of an expert as to a claimant's earning capacity, based on medical records and opinions *not in evidence*, and on claimant's statements made outside the record, was of no probative value. Here, there was evidence that plaintiff suffered permanent injury to her neck and back and had memory loss. One of the questions propounded to the expert was hypothecated on these facts. The defendant was not restricted, insofar as we can tell, from asking Newman's opinion, hypothecated on medical testimony that plaintiff was not disabled. Furthermore, as in the case of medical experts, or any expert for that matter, the opposing party can present conflicting expert evidence. Experts do not always agree. Differences in testimony, whether given by another expert or by other witnesses, go to the weight of the evidence rather than to its admissibility. Cf. Maslankowski v. Beam, 288 Ala. 254, 259 So.2d 804 (1972) (opinion of three justices).

■ Here, there was conflict in the medical evidence as to the extent of plaintiff's disability. Even in the face of Newman's testimony about decreased earning capacity, plaintiff testified that she *was,* in fact, *employed* after the accident. In view of this evidence, we cannot tell how much weight the jury accorded to Newman's testimony.

The trial court did not abuse its discretion in permitting Newman to testify as an expert. The use of vocational consultants to testify regarding job availability for persons suffering a disability is not novel, at least in administrative proceedings. Governmental studies and treatises have been used in administrative hearings held under the Social Security Act. See Rinaldi v. Ribicoff, 305 F.2d 548 (2d Cir. 1962). While the range of evidence allowed in such administrative hearings is more liberal than would be permitted under technical rules of evidence, the use of such expertise indicates that the subject matter of employability is one beyond the ken of the average layman, and in a proper case, expert testimony on this subject matter would be permissible.

This Court does not wish to be understood as holding that in all cases evidence of employability by any self-proclaimed expert is admissible, "but as in every civil case where expert testimony is presented, the responsibility is on the trial court to satisfy itself of the requirements of the law regarding admissibility. If this responsibility is exercised with care so that reasonable expert testimony is presented based upon reasonably sound scientific approaches, then this Court will not reverse in the absence of an abuse of discretion." Maslankowski v. Beam, 288 Ala. at 269, 259 So.2d at 818.

■ The admissibility of expert opinion evidence by any such vocational consultant is governed by some well settled principles. An expert may give his opinion based upon his own knowledge of the facts, stating these facts, then his opinion; or, he may give an opinion based upon a hypothetical question, based upon facts in evidence. In either case, the facts known to the expert or hypothecated must be facts in evidence. Blakeney v. Alabama Power Co., 222 Ala. 394, 133 So. 16, 18 (1931).

■■ An expert is not prohibited from stating his opinion based upon his own investigations and examinations. For example, a doctor can testify as to a patient's physical condition as revealed by an examination conducted by him and history given by the patient. (The reason for allowing the history to be given, is that such history, although hearsay, is "presumed to be made to aid a correct diagnosis and cure

. . . .") State Realty Co. v. Ligon, 218 Ala. 541, 119 So. 672 (1929). This Court has also held an expert in a condemnation case may state the sales price of "comparable lands" although hearsay, since it is permitted to show the basis for his opinion concerning the value of the land being condemned. McLemore v. Alabama Power Co., 285 Ala. 20, 228 So.2d 780 (1969).

█ We are unwilling to say that the trial court committed reversible error in permitting Newman to state his opinion regarding the employability of the plaintiff in this case. We also would like to point out that we have examined carefully the three assignments of error argued. Each assignment is addressed to the allowance of testimony by Newman. In two of the instances the objections were made on a ground different from that argued here. In the other instance, the error in overruling the objections, if any, was harmless. Rule 45.

Affirmed.

HEFLIN, C. J., MERRILL, BLOODWORTH, McCALL and FAULKNER, JJ., and LAWSON, Special Justice, concur; JONES, J., concurs specially; COLEMAN, J., dissents.

JONES, Justice (concurring specially).

I am in complete agreement with the result reached and the reasoning employed by the majority opinion. Caution should be exercised, however, not to construe the opinion to infer that had the trial Court disallowed Newman's testimony we would likewise hold such ruling errorless.

The discretion which the law accords the trial judge in the admissibility *vel non* of expert testimony is limited to the qualifications of the offered expert witness. See Southern Cement Co. v. Sproul, 378 F.2d 48 (5th Cir., 1967). The discretion allowed the trial judge goes to the weighing of the qualifications of the witness to testify as an expert, while the admissibility of the substance of his expert opinion (i. e., other than his qualifications) is governed by more definitive rules' of evidence. Where the plaintiff, as here, is claiming damages for decreased capacity to earn due to personal injury, admissibility of expert testimony bearing on this issue is beyond the discretionary powers of the trial Court. That the issue of plaintiff's claim of unemployability in the labor market, which is a material consideration in the ultimate determination of her capacity to earn, is within the expertise of Newman seems beyond question.

It is interesting, indeed, to review the contextual background in which the issue before us in this case arises. Traditionally, these cases (claims for personal injuries in damage suits and workmen's compensation cases) have been submitted to the triers of facts on the expert testimony of medical doctors. Proof of loss of future wages, or decreased capacity to earn, has generally been left to the exclusive province of the M. D. We have fallen into this error despite the medical profession's own admonition that their expertise in this field is limited to *physiological impairment* and their express warning that they do not profess to be experts in the area of *occupational disability*.[1]

Ironically, then, we have for so long followed an erroneous practice of depending on proof of decreased capacity to earn by self-professed non-experts that when an occupational specialist (a true expert in this field) is called for this purpose the reaction is one of shock and dismay; or, stated more bluntly, we have done it wrong for so long that when an attempt is made to do it right an objection is thereby invoked.

To be sure, this is a two-edged sword, fully capable of cutting both ways. This can be illustrated by taking as an example two separate claimants, each being right

---

1. For the full context of this admonition, see the preface that accompanies each of the disability evaluation pamphlets published and distributed by the American Medical Association.

handed and each having lost his left little finger, one being a banker and the other a professional violinist. The former may have no loss of earning capacity while the latter may be occupationally totally and permanently disabled. And, yet, the medical testimony, which is limited to impairment, is the same for both claimants. While the doctor's opinion of the claimant's organic or functional impairment is material (indeed, as here, it was essential to the hypothesis included in the question posed to Newman), additional expert testimony on the ultimate issue of loss of earning capacity is unquestionably admissible. The ultimate issue of the loss of future earnings or future earning capacity is necessarily dependent upon factors which include, but go beyond, the state of plaintiff's health, e. g., age, education, training, availability and susceptibility of rehabilitation, availability of employment, hiring practices, and other sociological considerations.[2]

2. For an appropriate charge on the loss of future earnings or future earning capacity, see Alabama Pattern Jury Instructions— Civil, Damages 11.11.