This case arose out of the collision of two motor vehicles. Linda Miller and James Robert Peters brought an action for negligence and wantonness against Clinton Ikner. The parties waived their right to a jury trial. The court found for the plaintiffs on the wantonness count. It awarded Miller $50,000.00 and Peters $7,500.00.
Miller and Ikner, who were employed at the Scott Paper Company in Mobile, dated for about two and a half years prior to October 1979. When their romantic relationship ended they did not part company on amicable terms. Miller subsequently began dating Peters. On the morning of February 24, 1980, Miller and Peters went to the beach in Miller's car and while at the beach they "had a few beers." Around two o'clock that afternoon they left the beach so that Miller could report to work at 3:00. Peters drove Miller to Scott Paper Company and left her there. After dropping Miller off at work, Peters drove to his place of employment, where he stayed until dark. After he got off work, Peters went to Miller's apartment and watched television until he went and picked her up from work about 11:00 p.m. Peters testified that he did not consume any alcohol between the time he took Miller to work and the time he picked her up. On his way to get her, Peters stopped at a gasoline station and bought more beer. After Peters picked Miller up, they each opened a can of beer and headed toward her apartment.
Another Scott Paper employee testified that he came out of the mill with Miller when they got off work at 11:00 and that he saw her get into an automobile at the gate. The witness got into his car and proceeded out of the parking lot with Miller's car ahead of his and with Ikner's car behind him. Ikner passed the witness and the witness turned off the highway prior to the collision.
While Miller and Peters were on their way back toward Miller's apartment, their *Page 389 
car collided with Ikner's. The plaintiffs contend that Ikner attempted to run their vehicle off the road and that he intentionally caused his vehicle to collide with their car. They testified that while driving in the left lane of Interstate Highway 10 Ikner's car pulled up alongside them. Upon seeing Ikner's car, Miller exclaimed, "Clint is going to hit us." Ikner's vehicle moved toward Miller's car, forcing it onto the shoulder and Ikner's left rear fender, came into contact with Miller's right front fender, causing Miller's car to strike a guardrail and a bridge. Miller testified that after the collision she lapsed into unconsciousness and upon regaining consciousness she looked up and saw Ikner looking into the window of her car laughing at her.
Ikner's version of the facts was very different from the plaintiffs'. He called to the stand a payroll accountant from Scott Paper, who testified that according to the company's records Miller was on vacation on the day in question and did not report to work on that day. Ikner testified that after he left work that evening he was proceeding down Interstate Highway 10 in the center lane in a lawful manner when his car was struck from the rear. He said that his car was spun around and that after he got out he realized for the first time that the car which had hit him was Miller's. Ikner testified that he went over to the car after the policeman arrived and looked in and saw Miller and Peters. He denied that he laughed at Miller when he looked into the car.
Ikner's first argument on appeal is that the verdict was contrary to the great weight of the evidence and that the evidence was insufficient to support the verdict. In support of that argument, he relies heavily on the testimony of the investigating police officer and on the plaintiffs' admission that they had been drinking at the time of the accident. The police officer testified that he found skid marks beginning at or near the line between the left lane and the center lane of the expressway and ending at the guard rail. The officer testified that in his opinion the impact occurred on the line between the lanes or on the right side of the left lane. The officer also testified that he smelled alcohol on Peter's breath. Ikner points out that the officer's opinion as to the location of the impact contradicted the plaintiffs' assertion that they were hit after Ikner forced them onto the shoulder of the road.
There are two possible conclusions which could be drawn from the evidence presented in this case. Either the defendant intentionally injured the plaintiffs in a fit of jealousy or the plaintiffs, for no apparent reason other than inattention or intoxication, negligently ran into an innocent defendant. It is impossible to know with absolute certainty whose version of the facts was closer to the truth. There is a presumption underlying our system of jurisprudence, however, that the trier of fact is in a better position to judge the credibility of witnesses and to ferret out the truth than is an appellate court. Therefore, when cases are presented ore tenus, the court's findings are entitled to a presumption of correctness and will not be disturbed on appeal unless plainly wrong or manifestly unjust. Seier v. Peek, 456 So.2d 1079, 1081 (Ala. 1984); Johnson v. Jagermoore-Estes Properties, 456 So.2d 1072,1075 (Ala. 1982). We are not in a position to weigh the evidence, which is, in effect, what the defendant wishes for us to do. Since there was credible evidence to support the trial court's findings, we must presume them to be correct.
In addition to arguing the sufficiency of the evidence, Ikner raised two issues regarding the admissibility of documentary evidence. The first issue concerns the admissibility of records from Scott Paper Company which Miller introduced to rebut Ikner's claim that she did not work on the evening in question. The other issue involves the admissibility of the plaintiffs' medical bills.
The evidence introduced through the payroll accountant caught the plaintiffs by surprise. During the lunch recess Miller and her attorney went to Scott Paper Company's offices to obtain records showing that *Page 390 
she worked on the day in question. On rebuttal, Miller testified that she went to the office at the company's pulp mill where she worked and requested the custodian of the records in that office to make copies of the time sheet and logbook entries. She testified that the pulp mill office keeps its own employee work records in the form of a logbook, which is filled in and signed by the two supervisors in charge of each shift at the end of each shift. Miller then offered photocopies of the logbook for the day in question in order to prove that she worked that day.
The defendant objected, and the trial court replied:
 "I'll sustain your objection but with this: I'm not going to rule on this case from the bench. But if you get those records to comply with the Alabama [Business] Records Act there would be no need for a subpoena or anything else for this custodian. If you get them certified under the Business Records Act, I will keep this case open for you to submit them."
The plaintiffs subsequently submitted the copies of the records, along with an affidavit from the custodian of the records stating that they were accurate photocopies of business records which he was required to keep as part of his job. The defendant renewed his objection to the admission of the exhibits.
On appeal the defendant argues that the trial court improperly allowed the plaintiffs to lay the foundation for introduction of the records into evidence by use of an affidavit. He argues that the affidavit is hearsay and that the predicate to the admissibility of business records must be laid by the testimony of a witness.
Any writing made as a record of an act, transaction, occurrence, or event is admissible to prove the act, transaction, occurrence, or event if it was made in the regular course of business at the time of the act, transaction, occurrence, or event, or within a reasonable time thereafter. Rule 44 (h) A.R.Civ.P.; see C. Gamble, McElroy's AlabamaEvidence, § 254.01 (3d ed. 1977).
The rule does not require that the person who made the entry be the witness who lays the foundation for the introduction of the record into evidence. See Bailey v. Tennessee Coal, Iron Railroad Co., 261 Ala. 526, 530-531, 75 So.2d 117, 120-121
(1954); Mahone v. Birmingham Electric Co., 261 Ala. 132,135-136, 73 So.2d 378, 380-381 (1954). Any witness who knows the method used in the business of making records of the kind in question and knows that it was the regular practice of the business to make such records at the time of the event in question or within a specified reasonable time thereafter is competent to lay the foundation by testifying that the exhibit is such a record. Austin v. State, 354 So.2d 40, 42
(Ala.Civ.App. 1977); C. Gamble, McElroy's Alabama Evidence, § 254.01 (3) (3d ed. 1977).
Mrs. Miller's testimony properly authenticated the documents. The affidavit from the custodian was not necessary to the introduction of the exhibit. They could have been admitted at the time they were first offered. The rule provides that a photocopy of a writing "shall be deemed to be an original record and shall be presumed to be a true and correct reproduction of the original record it purports to represent," and that "the circumstances of the making of such photostat or other photographic copy [of the record] may be shown to affect its weight but they shall not affect its admissibility." Rule 44 (h). The defendant's arguments regarding the admissibility of the pulp mill records are meritless.
Finally, Ikner argues that the trial court committed reversible error in overruling his objection to the admission of evidence of hospital bills on the ground that the plaintiffs had failed to show their reasonableness or the necessity for the treatment for which the bills were incurred.
The pretrial order entered in this case required the parties to make all documents, including medical bills, available to all parties prior to the trial; it required that any objections to such documents be made in writing prior to the trial. The defendant *Page 391 
argues that he was not presented with the bills prior to the trial. The plaintiffs argue that the bills were provided to the defendant.
At the time of the trial no one really knew whether the defendant, who during the pendency of the case had been represented by lawyers other than the one who tried the case, had been provided with copies of the bills. Even if trial counsel or the defendant's prior lawyers were not provided with copies, the lawyers who represented the defendant certainly knew or should have known the medical bills would be introduced at the trial. It was obvious that the plaintiffs were claiming that they incurred medical expenses as a result of the collision. A treating physician was deposed, and a lawyer representing the defendant was present at the deposition. To allow the objection to stand would thwart the operation of the pretrial order, which was designed to obviate the necessity of having to deal with this sort of objection during the trial.
AFFIRMED.
ALMON, ADAMS and HOUSTON, JJ., concur.
TORBERT, C.J., concurs specially.