LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a judgment of conviction and sentence on a separate jury trial of the appellant on an indictment that charged that he and Lisa Shy “Did knowingly have in actual or constructive possession in excess of one kilo or 2.2 pounds of Marijuana, contrary to law, in violation of 20-2-80 of the Code of Alabama,” which designates the crime as “Trafficking in cannabis.” The court fixed his punishment at imprisonment for twenty-five years and imposed a fine of $25,000.00.
The brevity of the STATEMENT OF FACTS contained in brief of counsel for appellant, which counsel for appellee “accepts ... as being substantially correct” and adopts “by reference,” influences the writer of this opinion to quote it in full. It is as follows:
“On March 29, 1984, Sheriff Lamar Had-den, Lieutenant Mike Gilley and other members of the Houston County Sheriff’s Department stopped Appellant, Charles Garrett and a friend Lisa Shy, on Highway 53, known as Eddings Road in Houston County, Alabama. They were traveling south in a red pickup truck with a camper on the back, pulling a boat. The Sheriff’s Department had received information on March 29, 1984, either through the Crime stoppers program of Houston County, Alabama, which is a program where anonymous tips are received, or from an old tried and true informant as testified by Lieutenant Gilley. Crime stoppers is a program through which informers are paid for information regarding possible crimes and their identity remains anonymous. From the information received from one of these sources, Lieutenant Gilley obtained a search warrant to search the person of Appellant and his residence. On the evening of March 29, 1984, Lieutenant Gilley, Sergeant Leroy Woods and agent Jones met at the intersection of Highway 53 and Eddings Road. They saw a red pickup truck pulling a boat turn on Eddings Road. They followed Appellant and stopped him about one mile from Eddings Road. They had no search warrant to search the pickup truck. The search warrant they had was addressed to the Appellant’s residence three miles south of Highway 53, right on Eddings Road for %o of a mile, then turn right on Willie Varnum Road for 3.1 miles to a dirt road, turn left for Vio of a mile. The affidavit made to the magistrate made no mention of a pickup truck and it is considered by Lieutenant Gilley they had no warrant to search the truck.
“They stopped approximately three miles from the trailer described in the search warrant. Eddings Road did not pass the trailer. To get to the trailer from Ed-dings Road required two right turns onto other roads.
“Lieutenant Gilley searched the back of the pickup truck and the boat. Inside the closed camper shell on the back of the pickup truck he found a brown closed suitcase. Inside the boat he found a five gallon sealed bucket. From inside the truck Officer James testified he found a pistol and a brown metal box and a roach in the ash tray of the truck. The box *321 was locked and he got the key from the appellant to unlock the box. Officer Jones testified, ‘He produced a key and that he opened and turned it over the [which we deem should be “to”] Lieutenant Gilley.’ Over the objection of the Appellant the State introduced evidence found in the suitcase of the closed camper in back of the truck and the contents contained in the locked box located in the cab of the truck. They had no warrant to search the pickup truck.
“Lieutenant Gilley and the other officer then took the Appellant to the trailer described in the warrant and, ‘he executed the search warrant.’ He found 43 one pound bags of marijuana, scales, 4 plastic bags containing white powder, a brown vial, a razor, and some capsules. “Joe Saloom of the Alabama Department of Forensic Sciences testified he received a large brown paper bag from Lieutenant Mike Gilley of the Houston County Sheriff’s Department. That it contained three exhibits. One just loose plant material and two large zip-lock plastic bags containing plant material. That in all there were 4.76 pounds of marijuana seed and other plant material. He testified he weighed all of the material together and did not check to see if the seed would germinate. At the close of Joe Saloom’s testimony, the State rested its case. The appellant filed a motion for Judgment of Acquittal which was overruled by the Court.
“The Appellant, Charles Garrett, testified in defense of the charges that he was set up by his wife or someone acting on her behalf.
“He said he had moved to the trailer in Houston County to get away from the harassment of his wife. That she had filed suit for divorce against him in the State of Kansas and was constantly harassing him about the divorce.
“Garrett further testified that he was in Texas several days before he was arrested and had come back to Houston County the night of March 28, 1984; that he had no knowledge of the controlled substance found in the trailer.
“It was further shown that Appellant’s wife was in town the day he was arrested or shortly thereafter and took his pickup truck and other property owned by him to Kansas where she resided.”
I.
The first issue presented by counsel for appellant is thus captioned in his brief:
“WAS THE BASIS FOR THE SEARCH WARRANT VALID WHEN THE STATE’S SOLE CLAIM TO SUCH VALIDITY WAS THE CONFLICTING AND INCONSISTENT TESTIMONY OF A TIP FROM AN INFORMER WHOSE IDENTITY THE STATE REFUSED TO DISCLOSE WHEN THERE WAS NO OTHER UNDERLYING CIRCUMSTANCES FOR THE WARRANT AND SEARCH.”
In his argument in support of Issue I, counsel for appellant cites Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), and Young v. State, 372 So.2d 409 (Ala.Cr.App.1979). Roviaro v. United States is distinguishable from the instant case in that in Roviaro, the informer was a participant in each of the two sales of the prohibited substance involved, while there is no contention in the instant case that the informer was a participant in the possession of the marijuana for which defendant was charged and being tried. In Young v. State, this Court held that where there was a tip from an unidentified informant which failed to meet one prong of the test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), of cause for arresting the defendant for possession of the prohibited substance, and the arrest of a person who had been identified by the informant as a possessor of the prohibited substance was not sufficient to justify the arrest of such person. Nevertheless, the Supreme Court in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), has relaxed the standard set forth in Aguilar v. Texas, as well as Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), by following the “totality-of-the-circumstances approach” as set forth in detail in the cited *322 case. We are of the opinion that, in accordance with Illinois v. Gates, the magistrate who issued the search warrant in the instant case was justified in issuing the warrant to search the person of appellant and his residence and that the officers were justified in executing the warrant.
II.
The following is the statement of the second issue presented in brief of counsel for appellant:
“DID THE STATE PROVE THROUGH COMPETENT EVIDENCE THAT THE APPELLANT WAS IN POSSESSION OF 2.2 POUNDS OF MARIJUANA NECESSARY FOR A CONVICTION UNDER [SECTION] 20-2-80, CODE OF ALABAMA 1975, ‘TRAFFICKING.’ ”
Counsel for appellant argues that there was no evidence in the case showing that the marijuana found in the trailer or mobile home of defendant weighed more than one kilo or 2.2 pounds. Counsel for appellant makes a strong point as to this by his emphasis upon the testimony of Mr. Sa-loom, a “Criminalist in charge of a laboratory and who examined the material sent to him by Lieutenant Mike Gilley,” which counsel argues fails to show that the substance seized by Lieutenant Gilley and sent to Mr. Saloom was weighed and found to contain as much as 2.2 pounds of marijuana as defined by the Alabama Uniform Controlled Substances Act, now codified by Code of Alabama 1975, § 20-2-2(15), as follows:
“Marihuana. All parts of the plant Cannabis sativa L., whether growing or not, the seeds thereof, the resin extracted from any part of the plant and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin. Such term does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil or cake or the sterilized seed of the plant which is incapable of germination.”
Counsel for appellant argues that even though Mr. Saloom testified that the material turned over to him by Lieutenant Gilley weighed 4.76 pounds, some of the marijuana was of “the mature stalks of the plant” or “sterilized seed of the plant which is incapable of germination.” Mr. Saloom’s testimony as to this particular point was, “There were no mature stalks.” He also testified that included in the weight of the material was the weight of the seed.
We are of the opinion that the testimony of Mr. Saloom constituted substantial evidence that the substance seized in the actual or constructive possession of the appellant weighed at least one kilo or 2.2 pounds without including “the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture or preparation of the mature stalks ..., fiber, oil or cake or the sterilized seed of the plant which is incapable of germination.”
The second issue of appellant is not well taken.
III.
Counsel for appellant states the following as Issue III:
“WAS IT ERROR TO ALLOW OFFICER GILLEY TO IDENTIFY THE PLANT MATERIAL IN HIS OPINION AS MARIJUANA?”
The issue is directed by appellant’s counsel at the ruling of the court as shown by the following part of the court reporter’s transcript of the direct examination by the State of Lieutenant Gilley:
“Q. Was anything in the bucket?
“MR. SMITH: We are going to object to anything in the bucket, Your Honor, unless he is—
“MR. SORRELS: [District Attorney] It shows knowledge, Your Honor. They have made a point about it and we have to show knowledge.
“THE COURT: I think I understand Mr. Smith’s objection. He may testify to what he observed, but as far as giving an opinion—
*323 “MR. SORRELS: Okay.
“Q. What did you observe in the bucket?
“A. Green vegetable residue in a plastic bag.
“Q. How long have you been a law enforcement officer, Mr. Gilley?
“A. Seventeen years.
“Q. During that time, have you worked drugs?
“A. Yes, sir, I have.
“Q. During that time, have you had an occasion to come into contact with marijuana?
“A. Yes, sir, I have.
“Q. On few occasions or many occasions?
“A. Very, very extended number of cases.
“Q. Do you have any judgment how many times you have observed marijuana?
“A. Thousands.
“Q. All right. Based on your experience and training as a law enforcement officer, have you had training in the detection of drugs?
“A. Yes, sir, I have.
“Q. Based on that training and your experience, do you have an opinion as to what that substance was?
“MR. SMITH: We are going to object, Your Honor. He is not an expert.
“MR. SORRELS: Yes, he is, Your Honor.
“MR. SMITH: We object to that, Your Honor. We maintain he is not an expert.
“MR. SORRELS: Judge, the case law in this State says an expert is one who has more than an ordinary layman’s knowledge about any kind of subject in cases have let this in — He can give his opinion on that — time and time again.
“MR. SMITH: It doesn’t make him an expert in drugs, Your Honor. That only applies to matters that come within people’s knowledge — , common knowledge by being experienced in it. This applies — this calls for expert testimony.
“THE COURT: Okay. I overrule your objection.
“Q. Do you have an opinion as to what that substance was in this bucket?
“A. Yes, sir, I do.
“Q. What was that?
“A. Marijuana.
“Q. Now, the suitcase you mentioned. What was in the suitcase — describe what you observed in the suitcase?
“A. Green, brown vegetable material.
“Q. Based on that — what I’ve asked you before, your experience, your knowledge and your training, do you have an opinion as to what that substance was?
“MR. SMITH: We renew our objection, again. He is not a medical expert and he is not qualified to give his opinion as to what drugs may or may not be.
“THE COURT: The defendant has his objection for the Record. I overrule the objection.
“A. Yes, sir, I do.
“Q. What is that opinion?
“A. Marijuana.”
Counsel for appellant cites some authorities from other jurisdictions that tend to support the position taken by him as to this issue; he does not rely upon any authority from any recorded opinion of any court of Alabama. The governing statutory law on the subject in Alabama is found in Code 1975, § 12-21-160, as follows:
“The opinions of experts on any question of science, skill, trade or like questions are always admissible, and such opinions may be given on the facts as proved by other witnesses.”
Judge McElroy states, as shown by Dean Gamble, in C. Gamble, McElroy’s Alabama Evidence § 127.02(5) (3rd ed. 1977), “The question of whether or not a particular witness will be allowed to testify as an expert is largely discretionary with the trial court, whose decision will not be disturbed on appeal except for palpable abuse,” as to which are cited Hagler v. Gilliland, 292 Ala. 262, 292 So.2d 647, (1974); Maslankowski v. Beam, 288 Ala. *324 254, 259 So.2d 804, (1972); Kozlowski v. State, 248 Ala. 304, 27 So.2d 818 (1946).
We are not in agreement with the contention of appellant’s counsel that the trial court committed error prejudicial to defendant in allowing Officer Gilley to identify the plant material in his opinion as marijuana.
IV.
Appellant’s fourth issue is thus captioned in brief of counsel for appellant:
“DID THE STATE HAVE THE AUTHORITY WITHOUT A SEARCH WARRANT TO SEARCH A CLOSED SUITCASE FOUND NOT IN THE PASSENGER COMPARTMENT OF THE DEFENDANT’S PICKUP TRUCK, BUT IN A CLOSED CAMPER ON THE REAR OF SAID TRUCK.”
In the argument made in the brief of counsel for appellant as to the fourth issue, the reference is to testimony on pages 102 and 103 of the record. Pages 102 and 103 of the transcript of the court reporter, as well as a large number of previous pages and subsequent pages, consist of proceedings prior to the actual trial of this case pertaining to various items, but including particularly that of the bonds, as shown by the following dialogue between the trial judge and counsel for defendant:
“THE COURT: I agree with Mr. Vales-ka. I’m not going to hold the preliminary hearing in that the defendants have already had one in the first place. But, most importantly, they have been indicted by the Grand Jury and probable cause has been determined. The purpose of setting this hearing has been on the issue of the bond, as you have said. Any evidence that is presented, I would consider it only to that issue.
“MR. SMITH: Yes, sir, as relevant to the bond. That’s our only contention, Your Honor. But we think that all the evidence that relates to the case would have some relevancy as to the amount of bond to be set. And, of course, the bond hearing that we had was after the testimony at the preliminary hearing.”
Our review of the court reporter’s transcript does not convince us that there was any evidence presented on the trial of the case as to the subject matter of Issue IV. We are convinced that the issue now under consideration has no bearing whatever upon whether the trial court committed error prejudicial to defendant on the trial of the case and presents no basis for any reversal or modification of the judgment of the trial court from which this appeal was taken. The authorities cited by counsel for appellant as to this issue pertain to proceedings during the trials of the particular cases and for that reason do not constitute any authority for the position taken by appellant as to this issue.
V.
The following is the final issue presented in brief of counsel for appellant:
“DID THE COURT ERR IN REFUSING DEFENDANT’S MOTION FOR A MISTRIAL WHEN OFFICER GILLEY TESTIFIED HE FOUND COCAINE IN DEFENDANT’S MOBILE HOME?”
The issue is directed at the ruling of the court as shown by the following part of the direct examination by the State of Officer Gilley:
“Q. Let me just ask you this question this way: Did you find any other drug or drug pharaphernalia besides what you have already testified to in that trailer house there?
“A. Yes, sir, we did.
“Q. What did you find?
“MR. BRACKIN: We object.
“THE COURT: Overruled.
“MR. BRACKIN: For the Record, we object to anything other than anything charged specifically under the indictment that this man'is being tried on now, which includes only trafficking and possession of marijuana, as being irrelevant and inflammatory and prejudicial and does not have any probative value.
“THE COURT: Your objection is overruled.
“Q. Go ahead.
“A. What did we find?
*325 “Q. Yes.
“A. We found Diazepam.
“Q. Where did you find that?
“A. In the house.
“Q. Where in the house?
“A. In the expando room.
“Q. Okay.
“A. We found cocaine.
“Q. Where was that?
“A. In the—
“MR. BRACKIN: We object to that.
“THE COURT: Sustain the objection. “MR. BRACKIN: We ask the court to instruct the jury to disregard that statement.
“THE COURT: Ladies and gentlemen, that last statement, you are not to consider that when you go to deliberate on this case and discuss the case and attempt to reach a verdict.
“MR. BRACKIN: We move for a mistrial on the grounds that it can’t be eradicated from the Jury’s mind.
“THE COURT: Your motion is overruled.
“Q. Describe what substance you saw and what it appeared to be.
“A. Okay. In one place we found a white powder — crystal powder in an amber bottle with razor blades and straws.
“Q. Okay. Anything else?
“A. We found other packages of white powder.
“Q. Where were they found?
“A. Most of it was found in the expan-do room.
“Q. The expando room?
“A. Yes, sir.
“Q. As to .this property you talked about taking in your possession, the stuff we have already gone over, plus what you testified to, did you turn this or portions of this over to anyone?
“A. Yes, we did.
“Q. Who did you turn it over to?
“A. The Department of Forensic Sciences in Enterprise.
“Q. Who did you turn it over to there?
“A. Joe Saloom.
“Q. Now, what all did you turn over to Joe Saloom at that time from this trailer?
“A. From the trailer?
“Q. Yes.
“A. One large, sealed grocery sack, Piggly Wiggly, four sealed, plastic bags containing white powder, one sealed, plastic packet containing brown vial, razor, spoon and capsules, one sealed plastic bag containing tablets, capsules and white powder.
“Q. As to these packages you testified to show in State’s Exhibit Number Two, the one on the bed there, did you turn any of these packages over to Mr. Sa-loom?
“A. They were all in a large Piggly Wiggly sack.
“Q. How many of these did you turn over?
“A. The exact number?
“Q. Yes.
“A. I don’t know, sir.
“Q. Was all this stuff in the same condition when you turned it over to them as when you first received it?
“A. Yes, sir, it was — No, sir, some of it had all been put together.”
Both parties on appeal cite authorities which they contend sustain their respective positions as to this particular issue. Neither party disagrees with the ruling of the trial court that the answer of the witness that the officers “found cocaine” should have been excluded from the consideration of the jury, which the trial judge endeavored to do. We are persuaded that the action of the trial court should not be reversed solely by reason of the denial of the motion for a mistrial, but that, in accordance with a well established principle, to grant or deny a motion for a mistrial is a matter within the sound discretion of the trial court, which can only be distrubed upon a showing of a manifest abuse of that discretion. Durden v. State, 394 So.2d 967, 972 (Ala.Cr.App.1980), cert. quashed, 394 So.2d 977 (Ala.1981) and Favor v. State, 389 So.2d 556, 560 (Ala.Cr.App.1980).
We have considered all of the issues presented by appellant and determine each *326 of them adversely to appellant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.