502 So.2d 340 (1987)
James WELCH, Administrator Of The Estate Of Shirley Welch, Deceased
v.
HOUSTON COUNTY HOSPITAL BOARD.
85-677.
Supreme Court of Alabama.
January 2, 1987.
Cada M. Carter of Carter & Hall, Dothan, and P. Russell Tarver, Birmingham, for appellant.
*341 Michael K. Wright of Norman, Fitzpatrick, Wood, Wright & Williams, Birmingham, for appellee.
BEATTY, Justice.
This is an appeal by James Welch, as administrator of the estate of Shirley Welch, deceased, from a summary judgment entered in favor of the defendant, Houston County Hospital Board, in Mr. Welch's action for the wrongful death of Mrs. Welch. We reverse and remand.
When she died, Mrs. Welch was a patient at the Southeast Alabama Medical Center, which is owned and operated by the defendant, Houston County Hospital Board ("Hospital Board"). She had been diagnosed as having developed cervical cancer. Mrs. Welch was admitted to the hospital on July 29, 1979, and, on July 30, Dr. Rufus Clyde Smith, Jr., performed an abdominal hysterectomy on her. She appeared to be having a normal recovery until the morning of July 31, 1979, when she suffered a grand mal seizure. After this seizure, Mrs. Welch was generally stabilized, although no central nervous system function was ever detected. Mrs. Welch died on August 3, 1979. An autopsy revealed hypoxic changes in the brain.
Thereafter, the plaintiff, in his capacity as administrator, filed this action for wrongful death. Named as defendants were the Hospital Board, three drug manufacturers, and other fictitiously named defendants. All defendants were subsequently dismissed except the Hospital Board.
In his complaint, the plaintiff alleged that the Hospital Board "was negligent in its care and treatment of plaintiff's decedent in that it failed to exercise that degree of reasonable care, skill, and diligence as used by hospitals generally in the community." In response to the Hospital Board's motion for a more definite statement, plaintiff alleged the following:
"1. On July 29, 1979, plaintiff's decedent, Shirley Welch, was admitted to defendant hospital for an elective total abdominal hysterectomy.
"2. After the performance of the hysterectomy and appendectomy on July 30, 1979, plaintiff's decedent on July 31, 1979, suffered from `an episode manifested by complaint of severe headache, apnea and grand mal type seizure' after the administration of certain drugs and after treatment by defendant hospital's agents and employees during plaintiff's decedent's postoperative recovery period.
"3. Defendant hospital, by and through its agents and employees, negligently failed to administer proper drugs to plaintiff's decedent or administered the wrong drugs, negligently failed to monitor the condition of plaintiff's decedent during the postoperative recovery period and negligently failed to treat plaintiff's decedent when the episode referred to in paragraph 2 occurred.
"4. As a proximate consequence of the negligence of defendant, plaintiff's decedent died."
Following the exchange of certain discovery requests, the Hospital Board filed its motion for summary judgment, alleging "that there is no genuine issue as to any material fact, and this Defendant is entitled to judgment as a matter of law." This motion was based on the pleadings and the Hospital Board's answers to interrogatories propounded by the plaintiff and two of the drug manufacturers. In responding to the allegations of the plaintiff's complaint against it, the Hospital Board argued in its motion that it had "answered interrogatories identifying each drug administered, the physician prescribing the same, the quantity administered pursuant to physician's order, and the hospital personnel involved in such administration," and argued further that "[i]t is undisputed that all medications administered were administered in the appropriate amounts or quantity, pursuant to the physician's order."
In opposition to the Hospital Board's motion for summary judgment, the plaintiff filed the affidavit of Bertie Enfinger, the mother of plaintiff's decedent, *342 Shirley Welch. That affidavit stated, in pertinent part:
"My daughter's name was Shirley Jo Enfinger Welch. On the day of her death at Southeast Alabama Medical Center, I was staying with her. My daughter was doing fine and having no problems other than some pain from the incision from the hysterectomy she had just had. She asked me to get the nurses to give her something for the pain from the incision. So one of the nurses came in and gave Shirley a shot. It was not over five to ten minutes later that my daughter grabbed her neck and head and said, `Mama, get help, my neck and head is killing me.' Two or three minutes later my daughter lost consciousness. She was doing fine until the shot was given to her. It is my belief that she was given the wrong medication. I believe this from my heart, based on the situation as I saw it happen that day. When I called the nurse and she came in, her first words were, `Oh, my God.'"
Apparently, at the hearing on the motion, the plaintiff also offered the deposition of Dr. Rufus Clyde Smith, one of Mrs. Welch's attending physicians, in opposition to the motion for summary judgment. The trial judge entered an order granting the Hospital Board's motion, wherein he stated:
"After consideration of the motion, arguments and brief of counsel, answers to interrogatories and the deposition testimony of Dr. Rufus Clyde Smith, Jr., the Court is of the opinion that the motion is well taken and due to be granted."
This appeal followed. We hold that summary judgment was improper in this case. None of the evidence material to the issues in this case, offered either in support of or in opposition to the summary judgment motion, would be admissible at trial and, therefore, that evidence cannot properly be considered on a motion for summary judgment.
While Rule 56, A.R.Civ.P., permits evidence in the form of depositions and answers to interrogatories to be submitted in support of, or in opposition to, a summary judgment motion (see Vulcan Freight Lines v. South Carolina Ins. Co., 446 So.2d 603, 604-05 (Ala.1982)), that evidence must, nevertheless, conform to the requirements of Rule 56(e) and be admissible at trial. Griffin v. Little, 451 So.2d 284, 286 (Ala.1984); Day v. Merchants National Bank of Mobile, 431 So.2d 1254 (Ala.1983); Whatley v. Cardinal Pest Control, 388 So.2d 529, 532 (Ala.1980). That is, the content of the deposition or answers to the interrogatories must be asserted on the personal knowledge of the deponent or person giving the answers, must set forth facts that would be admissible in evidence, and must show affirmatively that the deponent or person giving the answers is competent to testify to the matters asserted. Vulcan Freight Lines v. South Carolina Ins. Co., supra; Morris v. Morris, 366 So.2d 676, 678 (Ala.1978); Wright, Miller & Kane, 10A Federal Practice & Procedure § 2722, pp. 48-52 (1983). These requirements are mandatory. Arrington v. Working Woman's Home, 368 So.2d 851, 854 (Ala.1979); Oliver v. Brock, 342 So.2d 1, 4-5 (Ala.1976). Matters stated based only upon information and belief are essentially hearsay and are, therefore, insufficient. Vulcan Freight Lines v. South Carolina Ins. Co., supra; Oliver v. Brock, supra.
Furthermore,
"The general rule in Alabama is that in medical malpractice cases expert medical testimony is required to establish what is and what is not proper medical treatment and procedure. An exception to this general rule exists where an understanding of the [medical care provider's] alleged lack of due care or skill requires only common knowledge or experience."
Powell v. Mullins, 479 So.2d 1119, 1120 (Ala.1985). Thus, although Mrs. Enfinger's affidavit can be considered as evidence of what happened on the morning of Mrs. Welch's seizure (because she witnessed the events), the Hospital Board is correct in its argument that Mrs. Enfinger's statement, "[I believe] she was given the wrong medication," *343 is inadmissible as evidence of that alleged fact. There is nothing in the record to show that Mrs. Enfinger possessed the qualifications or expertise to allow her to draw this conclusion from what she observed. Nor is there any other evidence to show that Mrs. Enfinger had specific knowledge that the medication administered to Mrs. Welch minutes before her seizure was the wrong medication.
Notwithstanding Mrs. Enfinger's affidavit, the substantive issue in this case remains whether the Hospital Board, as the moving party, met its burden of proving that no genuine issue of material fact exists with respect to whether it properly administered to Shirley Welch only those drugs prescribed by her physicians. The Hospital Board contends it met this burden, relying on pertinent portions of Dr. Smith's deposition and the Hospital Board's answers to interrogatories which were given and signed by its "Administrator." Without question, the matters material to this case, asserted in the answers and deposition, are based almost exclusively on the medical chart and hospital records of the plaintiff's decedent, Mrs. Welch. Neither these medical records nor sworn or certified copies thereof were ever made a part of this record. In Oliver v. Brock, supra, at 4-5, this Court held as follows:
"Mrs. Oliver contends in her affidavit that she has reviewed the chart prepared by the defendant physicians stating the names of the doctors who treated her daughter. She says she has read on the `discharge summary' that Dr. Brock was consulted and assisted in prescribing the treatment of her daughter. However, that document is not made a part of the record. ARCP 56(e) requires that sworn or certified copies of all papers or parts thereof referred to in [answers to interrogatories or depositions] (in support of or in opposition to a motion for summary judgment) shall be attached thereto or served therewith.

"`... This means that if written documents are relied upon they actually must be exhibited; [answers to interrogatories or depositions] that purport to describe a document's substance or an interpretation of its contents are insufficient....' Wright & Miller, Federal Practice and Procedure: Civil § 2722."
(Emphasis added.) Accord, Osborn v. Johns, 468 So.2d 103, 108 (Ala.1985).
As the plaintiff correctly points out in his brief, there is nothing contained in the Hospital Board's answers to plaintiff's interrogatories which affirmatively shows that its administrator had personal knowledge of the facts pertaining to the drugs administered to Mrs. Welch, nor is it otherwise conceivable from the adduced facts that he would have such personal knowledge. Thus, without the hospital records themselves, these answers to interrogatories "purport[ing] to describe ... [the] substance or ... contents [of these records] are insufficient," and cannot be properly considered on summary judgment. Oliver v. Brock, supra (quoting Wright & Miller & Kane, Federal Practice and Procedure: Civil § 2722).
Relying on Dr. Smith's deposition, the Hospital Board states that the testimony of Dr. Smith establishes that the plaintiff received only the medications prescribed and received them in the appropriate doses. It is obvious from Dr. Smith's deposition that his "findings" that Mrs. Welch was not given the wrong drug or improper amounts of drugs were based on his review of her medical chart or on interviews with personnel, and not on his own personal knowledge of what drugs the hospital actually administered, or in what dosage they were given, or at what dosage interval they were administered. Nor were these findings by Dr. Smith based on his own examination of Mrs. Welch after her seizure:
"Q. Do you have an opinion as to what caused her seizure, in this case?
"A. I just don't.
"Q. Has anyone expressed an opinion to you as to what the cause might have been?

*344 "A. I think there was a lot of speculation, afterward, as to what could. Obviously, these things were checked out; could there have been other medications, medication in error, of dose or substance;
...
"Now, as her mother put it, if she hadn't been in the hospital, this wouldn't have happened. And, I, you know, would have to agree with that.
"But, I certainly can't connect the care that she received with the outcome that resulted.
"Q. And, we're talking about 
"A. The medication, the operation. I just  in reviewing the chart, I just don't see  I don't know what happened.
"....
"Q. Do you have any information, from any source, that she was given the wrong drug? One not intended for her?
"A. No. As a matter of fact, we carefully interviewed the personnel. And, I looked to see if I could see any possible connection [sic; medication?] that could have been mistakenly given, that would have resulted in such, and found none.
"And, of course, I found no evidence of anything other than what was prescribed, in the doses "
(Emphasis added.) Neither the chart nor any statements in the form of affidavits or depositions by the personnel interviewed by Dr. Smith are contained in this record. Thus, the representations in the chart and by the personnel, relied on by Dr. Smith, are hearsay. Consequently, Dr. Smith's deposition, describing, interpreting, or relying upon the contents or substance of the chart or his interviews, is also inadmissible, and, therefore, cannot be properly considered on motion for summary judgment.
It is important to note that it is not the admissibility of the hospital charts or records themselves that is at issue in this case. Provided the proper predicate is laid, the records themselves would be admissible. See Rule 44, A.R.Civ.P.; Ikner v. Miller, 477 So.2d 387 (Ala.1985); Wilson v. State, 243 Ala. 1, 8 So.2d 422 (1942); Sellers v. Doctors Medical Center, 402 So.2d 1021 (Ala.Civ.App.1981); Carroll v. State, 370 So.2d 749 (Ala.Crim.App.), cert. denied, 370 So.2d 761 (Ala.1979). See also, Liberty National Life Ins. Co. v. Reid, 276 Ala. 25, 158 So.2d 667 (1963). Rather, at issue in this case is the admissibility vel non of the Hospital Board's answers to interrogatories, which were given by the Hospital Board's administrator based, in pertinent part, on information taken from Mrs. Welch's hospital records. Also at issue is the admissibility of Dr. Smith's "findings" with respect to whether the hospital properly administered to Mrs. Welch only those drugs prescribed by her physicians, which "findings" are clearly based on his review of her hospital records. It bears repeating that, because the hospital records were relied upon by Dr. Smith and the Hospital Board's administrator, they had to be exhibited; without them, the deposition and the answers to interrogatories are insufficient to establish the Hospital Board's proper administration of proper drugs. Oliver v. Brock, supra.
Another point to be emphasized is that it is the Hospital Board's negligence that is at the heart of this case, and not that of the attending physicians. Furthermore, it is axiomatic that, on summary judgment, this Court is obliged to view the evidence in the light most favorable to the non-moving party, as well as to draw all reasonable inferences in that party's favor. It is quite clear from Dr. Smith's deposition that he was not stating, in his expert opinion, that the hospital properly administered the proper drugs to Mrs. Welch. Nor did Dr. Smith state that, in his expert opinion, Mrs. Welch's seizure and subsequent death were not caused either by the hospital's administration of an improper drug or by its improper administration of a proper drug. Indeed, he deposed that he had no opinion as to the cause of Mrs. Welch's seizure, and he merely said, in essence, that, from his review of her chart and his interviews with hospital personnel, he found no evidence that Mrs. Welch was *345 given "anything other than what was prescribed, in the doses [prescribed]."
Nevertheless, even if this Court, on summary judgment, liberally interpreted Dr. Smith's statement, "I certainly can't connect the care that she received with the outcome that resulted," as his expert opinion that the Hospital Board did not violate its standard of care in its treatment of Mrs. Welch, such an interpretation in favor of the Hospital Board, the moving party, would be flagrantly violative of the above stated rule that this Court must view the evidence in the light most favorable to the non-moving party. Moreover, even assuming that this statement does amount to an expert opinion, it, too, would be inadmissible, inasmuch as it is an expert opinion based on facts (i.e., hospital records and unverified statements of hospital personnel) not in evidence and not within Dr. Smith's personal knowledge.
In Thompson v. Jarrell, 460 So.2d 148, 150 (Ala.1984), also a medical malpractice case, this Court stated the general rule in this jurisdiction with respect to the proper factual bases for expert testimony:
"Our cases are consistent in holding that an expert witness may give opinion testimony based upon either facts of which he has personal knowledge or facts which are assumed in a hypothetical question.... In either event, `the facts known to the expert or hypothe[sized] must be facts in evidence.' Hagler v. Gilliland, 292 Ala. 262, 265, 292 So.2d 647 (1974)."
(Emphasis added.) This rule is also stated in Hagler v. Gilliland, 292 Ala. 262, 292 So.2d 647 (1974), quoted from in part in Thompson v. Jarrell, supra:
"An expert may give his opinion based upon his own knowledge of the facts, stating these facts, then his opinion; or, he may give an opinion based upon a hypothetical question, based upon facts in evidence. In either case, the facts known to the expert or hypothecated must be facts in evidence. Blakeney v. Alabama Power Co., 222 Ala. 394, 133 So. 16, 18 (1931)."
(Emphasis added.) Most recently, in Otwell v. Bryant, 497 So.2d 111 (Ala.1986), another medical malpractice case, this Court reiterated the general rule set out above, and affirmed the trial court's ruling that the medical expert could not express an opinion based on medical records not in evidence:
"It is ... well established that a hypothetical question is not objectionable merely because it fails to include every fact shown by the evidence, but it must include `sufficient facts in evidence upon which an expert opinion can be based.'
Thompson v. Jarrell, 460 So.2d 148 (Ala. 1984)....
"The trial court found that the plaintiffs' attorney attempted to incorporate medical records in the hypothetical which were not introduced into evidence. It also found that the hypothetical did not contain sufficient facts. We find no abuse of discretion in the trial court's sustaining of the defendants' objection to the hypothetical questions."
(Emphasis added.) 497 So.2d at 116.
Moreover, while expert testimony would be necessary to establish that Mrs. Welch's seizure and subsequent death could have been caused by the improper administration of drugs, expert medical testimony is not required for the factfinder to determine whether the hospital did, in fact, improperly administer drugs to Mrs. Welch. Such a factual determination is not beyond the ken of the average layman and should be left to a jury. Thus, it would be improper to allow Dr. Smith to give his "expert opinion" that the hospital did not improperly administer drugs to Mrs. Welch. See Thompson v. Jarrell, supra, where this Court held the following:
"It was also error to allow Dr. Campbell to testify that, in his opinion, Mrs. Thompson died of a voluntary drug overdose. In order for expert testimony to be helpful to the trier of fact, it must appear that the subject matter is *346 beyond the ken of the average layman. Thomas v. State, 249 Ala. 358, 31 So.2d 71 (1947); Hicks v. State, 247 Ala. 439, 25 So.2d 139 (1946). The determination of `voluntariness,' if relevant at all, should be left to the jury."
("Voluntary" emphasized in original; other emphasis added.) 460 So.2d at 151.
Because none of the evidence of record which tended to establish that the Hospital Board properly administered proper drugs to Mrs. Welch is admissible, summary judgment should not have been granted in this case.
Plaintiff also alleged that the Hospital Board "negligently failed to monitor the condition of plaintiff's decedent during post operative recovery period and negligently failed to treat plaintiff's decedent" when she had her grand mal seizure. Just as with plaintiff's allegation concerning the Hospital Board's proper administration of drugs, there is no admissible evidence of record establishing that the Hospital Board did indeed (1) properly monitor the condition of plaintiff's decedent during the post operative recovery period and (2) properly treat plaintiff's decedent at the time she had the seizure. Therefore, summary judgment was improper as to these claims as well.
Based on the foregoing, we hold that the summary judgment is due to be, and it is hereby, reversed, and this case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX and ALMON, JJ., concur.
HOUSTON, J., concurs specially.
HOUSTON, Justice (concurring specially).
The hospital records were not exhibits; without them, the deposition and the answers to interrogatories are insufficient to establish the proper administration of proper drugs. I would reverse and remand on this and this alone.