This is a medical malpractice case.
The plaintiff/appellant Arlen Otwell went to see Dr. Kirby F. Bryant of Anniston Urologic Associates, P.A. (the defendants/appellees) after he passed blood in his urine. After a series of tests, Dr. Bryant was unable to tell for sure, but, from the results of a cystoscope, suspected Otwell had bladder cancer. The pathologist had reported this appeared to be an aggressive malignant neoplasm, but the sample was too small to make a definitive diagnosis. Dr. Bryant scheduled Arlen for surgery. Dr. Bryant told the family before surgery that he suspected Otwell's bladder, prostate, and seminal vesicles would have to be removed. In addition, Arlen would have to have an ileal conduit. Arlen and his family agreed to the surgery.
During the operation, Dr. Bryant found the tumor that his tests had indicated in Arlen's bladder area. It was about the size of a football. Three samples sent to the laboratory were indefinite. While Dr. Bryant knew that it was impossible to make a definitive diagnosis at that time, he was able to see the tumor and could appreciate beyond any doubt that the tumor was destroying the bladder and the prostate and had destroyed the seminal vesicles and had to be removed whether it was a malignant sarcoma or some type of non-malignant tumor. Dr. Bryant removed the tumor and the other organs he had expected he would need to remove. As a result, Arlen cannot have an erection, or ejaculation, and must wear the ileal conduit permanently.
Dr. Bryant was later informed, as a result of tests on the tumor, that Arlen did not have cancer, but had neurofibromatosis. Experts testified that the only difference *Page 113 
in this disease and cancer is that neurofibromatosis is not carried by the blood stream or the lymph system. The experts also testified to the effect that Arlen was already sterile at the time of the surgery, and that if the tumor was not removed, it would have killed Arlen eventually.
Appellants commenced this suit by filing a complaint in the Circuit Court of Clay County (later transferred to Calhoun County Circuit Court). The complaint alleged medical negligence on the part of Dr. Bryant on the basis of his care and treatment of Arlen Otwell (removing the tumor without a definitive diagnosis). It also alleged negligence on behalf of Anniston Urologic Associates by and through the actions of its agent, Dr. Bryant. A jury trial was had on this matter. The jury returned a verdict in favor of the appellees. The appellants then filed a motion for a new trial, which was denied.
Five issues are presented for this Court to review. We will consider first the issue of whether testimony that the defense's experts belonged to the same mutual liability insurance carrier should have been allowed. The appellants argue that the trial court improperly refused to allow evidence that witnesses presented by both the appellants and appellees were covered under professional liability insurance.
The appellees in this case, Dr. Bryant and Anniston Urologic Associates, are insured by the Mutual Assurance Society of Alabama (MASA). Additionally, appellee's witnesses, Dr. Gibbs and Dr. Talbot, were insured by MASA and appellees' witness, Dr. Crowe, was president of MASA at the time of this litigation and was a member of the claims committee reviewing this case. MASA was formed to provide malpractice insurance for doctors after the major malpractice carriers stopped writing policies in Alabama. The doctors who are members of the society pay money each year to the fund. Malpractice awards are paid out of this fund and MASA has paid a dividend in the past, which is just a return of part of the premiums.
During the trial of this case, the trial judge granted the appellees' motion in limine concerning any reference to liability insurance with respect to any witness, and ordered removed from the video deposition of Dr. William A. Talbot, Jr., a witness on behalf of the appellees, those portions of appellants' attorney's cross-examination concerning Dr. Talbot's liability insurance carrier, MASA. The deleted testimony would have revealed that Dr. Talbot is insured by the same liability carrier which insures the appellees. Consequently, at trial appellants were not only precluded from questioning any witness on direct about MASA, but were also not allowed to cross-examine or impeach appellees or appellees' witnesses by a showing of their pecuniary interest, bias, or prejudice resulting from their relationship with MASA.
A plaintiff may not ordinarily introduce evidence showing that the defendant has liability insurance. Welborn v. Snider,431 So.2d 1198 (Ala. 1983); Thorne v. Parrish, 265 Ala. 193,90 So.2d 781 (1956). The appellants contend that a showing of liability insurance coverage is permissible if offered for the purpose of demonstrating bias or prejudice of a witness in favor of a particular party to the case. We recognize that the trial court has discretion to admit evidence to show the bias, prejudice, or interest of a witness, Osborne v. Cobb,410 So.2d 396 (Ala. 1982); however, this rule applies only in certain limited situations. In Hinton Sons v. Strahan, 266 Ala. 307,96 So.2d 426 (1957), this Court sustained the trial court's ruling allowing the introduction of evidence that a witness who testified in behalf of the defendant had a connection with the liability insurer of the defendant. The connection between the witness and the insurer was not simply that of a policyholder, as in the present case. The witness testifying in Hinton was a member of the board of directors and was employed by the liability insurer. This Court made it clear in Hinton that the witness must be an "agent" of the insurer before interrogation about insurance coverage would be acceptable. *Page 114 
That this Court did not intend to infer in Hinton that simply being a policyholder of the same company insuring a defendant allows the injection of insurance is further supported by this Court's decision in Robins Engineering, Inc. v. Cockrell,354 So.2d 1 (Ala. 1977). In rejecting the plaintiff's contention that proof of an indemnity agreement was admissible to show bias, this Court distinguished Hinton and noted that the witness undergoing questioning in Hinton was "employed by the insurance company and his bias would be apparent." (Emphasis supplied.)
Hinton and the cases following it do indeed recognize that under certain circumstances a witness may have a sufficient degree of "connection" with the liability insurance carrier to justify allowing proof of this relationship as a means of attacking the credibility of the witness. What is missing in the present case is the sufficient degree of "connection." The coincidental fact that the witness and the defendants are both insured by MASA is not an adequate degree of connection to counter-balance the undue prejudice that will result to the defendants through alerting the jury to the existence of liability insurance.
The appellants offer two cases in support of their contention that proof of insurance may be offered to show bias. These cases are distinguishable from the case at bar. In Majestic v.Louisville N.R. Co., 147 F.2d 621 (6th Cir. 1945) the witness was an employee of a party who had an interest in the ultimate recovery in the case. The court stated that the witness's employment could be shown for the purpose of testing his credibility as a witness. Similarly, in Charter v. Chleborad,551 F.2d 246 (8th Cir. 1977), cert. denied 434 U.S. 856,98 S.Ct. 176, 54 L.Ed.2d 128 (1977) a witness was called by the defense to criticize the reputation for truth and veracity of the plaintiff's expert witness. The witness called by the defense was an attorney who regularly defended physicians and "was employed in part by the same liability carrier" that provided professional liability insurance to the defendant-physician. All of the federal decisions upon which the appellants rely fall squarely within the narrow exception to the general exclusion of evidence of liability insurance that this Court outlined in Hinton, supra.
Two courts from other jurisdictions have been confronted with factual circumstances similar to those in the present case. In each instance, these courts have ruled that evidence that a witness was insured by the same liability carrier as the defendant was inadmissible. In Mendoza v. Varon, 563 S.W.2d 646
(Tex.Civ.App. 1978), a medical malpractice action, Mendoza, the plaintiff, attempted to introduce evidence that Dr. Varon and one of his expert witnesses had professional liability insurance through the same insurance company. According to the Texas court, the fact that the witness was merely a policyholder of the same company did not present a sufficient degree of connection with the carrier to warrant proof of this relationship. The Court stated:
 "In the present case, however, the witness had no direct interest in the outcome of the litigation, as would an agent, owner or employee of the defendant's insurer. While it is true that a large judgment against any doctor will probably affect the insurance rates of other physicians, this interest is remote, and any proof of bias based upon that interest is outweighed by the prejudice caused by informing the jury of the defendant's insurance protection. Accordingly, this case falls within the rule that testimony calculated to inform the jury of the defendant's insurance coverage is inadmissible, Rhoden v. Booth, 344 S.W.2d 481, 487 (Tex.Civ.App. — Dallas 1961, writ ref'd n.r.e.), and the trial court did not err in excluding this line of inquiry."
Mendoza v. Varon, at 649.
The Court of Appeals of New Mexico reached a similar result in Davila v. Bodelson, 103 N.M. 243, 704 P.2d 1119 (N.M.Ct.App. 1985), cert. denied 103 N.M. 177, 704 P.2d 431 (N.M. 1985). InBodelson the plaintiff sought to question the defendant, *Page 115 
Dr. Bodelson, and Dr. Bodelson's expert, Dr. Hutchison, regarding provisions of the State Medical Malpractice Act. The plaintiff sought to establish that a state fund existed to pay a portion of any malpractice judgment in excess of $100,000. The plaintiff reasoned that this introduced personal bias on behalf of Dr. Hutchison in that a verdict in favor of Dr. Bodelson might decrease the risk of Dr. Hutchison's exposure to an annual surcharge. The appellate court sustained the trial court's order granting the physician defendant's motion in limine which prohibited questioning of medical expert witnesses with regard to the existence and source of medical malpractice insurance. The court noted that in balancing the probative value of this evidence against its prejudicial effect, the scales tipped in favor of a finding that the defendant would be unduly prejudiced if this evidence were permitted.
We are of the opinion that the trial court correctly determined that the testimony that the defense's experts belonged to the same mutual liability insurance carrier was inadmissible. The testimony presented by the appellees at trial was clear and uncontroverted that no verdict, even a catastrophic verdict against the defendants, could have any financial effect on any witness called at the trial of this matter. The potential for bias on the part of any witness due to his coverage under a professional liability policy is so remote as to be virtually non-existent. When this remote potential for bias is balanced against the overwhelming prejudicial effect of allowing evidence of professional liability insurance, it becomes evident that admission of such evidence would be error.
The second issue presented is whether the trial judge properly charged the jury and provided the jury with an appropriate verdict form. The appellants in this case contend that the trial judge erred by not instructing the jury that they could render a separate verdict against Anniston Urologic Associates even if they did not render a verdict against the primary doctor in the case, Dr. Bryant. The trial judge did not issue a separate verdict form for Anniston Urologic Associates. The appellants contend that Anniston Urologic Associates could have been found liable under the theory of principal and agent and respondeat superior.
Under the doctrine of respondeat superior, the general rule is that a verdict cannot stand which finds against the master and for the servant. This rule is limited to those cases where the liability of the master is predicated solely on the act or omission of the servant. Otts v. Gray, 287 Ala. 685,255 So.2d 26 (1971); Pollard v. Coulter, 238 Ala. 421, 191 So. 231
(1939). In Atlantic Coast Line R. Co. v. Kines, 276 Ala. 253,160 So.2d 869 (1963), this Court stated:
 "Where liability of the master may be rested on account of the negligence of employees other than the employee who was made a defendant, a verdict against the master, but exonerating the employee who was made a defendant, is not inconsistent. F.W. Woolworth Co. v. Erickson, 221 Ala. 5, 127 So. 534; Pollard v. Coulter, 238 Ala. 421, 191 So. 231; Southeastern Greyhound Lines v. Callahan, 244 Ala. 449, 13 So.2d 660."
We agree with appellants that this is the law. The appellants do not address the fact that in order for a jury to properly consider the case against the employer separate and apart from the allegations against the employee who is made a defendant, they must first establish a case against some other employee or employees who are not individual parties to the suit. Appellants failed to carry this burden at trial. In order to have the case submitted to the jury with regard to Anniston Urologic Associates separate from Dr. Bryant, the appellants must first prove a case against Dr. Hensleigh or Dr. Kitchens or both of them.
In support of their position, appellants simply note that both Dr. Hensleigh and Dr. Kitchens were involved in the case and treatment of Arlen Otwell. This fails to establish a scintilla of evidence against either Dr. Hensleigh or Dr. Kitchens. This *Page 116 
Court has repeatedly held that in malpractice cases, expert medical testimony is required to establish a scintilla of evidence against a physician. See, Gilbert v. Campbell,440 So.2d 1048 (Ala. 1983); Moses v. Gaba, 435 So.2d 58 (Ala. 1983). There was no expert testimony elicited that was critical of the care and treatment provided by Dr. Kitchens or Dr. Hensleigh. The only expert that testified that there was a breach of the standard of care was the plaintiff's expert, Dr. Morton. He testified as to the standard of care in answer to hypothetical questions posed by appellant's counsel. All of these hypothetical questions were based upon evidence before the jury with regard to the actions taken by Dr. Bryant. There were no hypothetical questions posed that incorporated the facts and circumstances of the care and treatment provided by Dr. Kitchens or Dr. Hensleigh.
Under these circumstances, no scintilla of evidence was presented for the jury's consideration with regard to the care and treatment provided by Dr. Kitchens and Dr. Hensleigh. We are of the opinion that it was entirely proper for the trial court to charge the jury only with regard to the care and treatment by Dr. Bryant and to fail to provide to the jury a separate verdict form with regard to Anniston Urologic Associates, because there was not a scintilla of evidence presented against Dr. Kitchens or Dr. Hensleigh.
A third issue presented is whether the trial court erred when it disallowed the appellant's hypothetical questions. The appellants contend that the trial judge exceeded the bounds of his discretion and acted arbitrarily in disallowing all of plaintiff's hypothetical questions when it consistently allowed defendant's counsel to use hypotheticals. The trial court, when it sustained defendant's objections to the hypothetical questions, stated:
 "It's a nontreating physician. You can only ask him his opinion to hypothetical questions and those hypotheticals, first of all have to contain a sufficient amount of information for him to reasonably be expected to base his opinion upon it. The jury has a right to hear what he bases his opinion on so they can take other testimony presented later in the case in arriving at whether or not they feel that his opinion is more credible than the opinion of some other witness that may testify in the case or in at least in considering his testimony.
 "You cannot expect a jury to take a mass of medical records and have him just say I've considered those and this is my opinion and then have the jury read those same records and be able to properly evaluate his opinion. They have a right to hear what he bases his opinion on as does the defendant so that the defendant can reasonably be expected to cross examine this gentleman."
The questions to which defendants' counsel objected at the trial were based upon the attempts of the plaintiffs to incorporate into the hypothetical questions the medical records of Arlen Otwell. In Salotti v. Seaboard Coast Line R. Co.,293 Ala. 1, 299 So.2d 695 (1974), this Court held that it was improper to pose to an expert witness hypothetical questions in which medical records are incorporated into the hypothetical. It is also well established that a hypothetical question is not objectionable merely because it fails to include every fact shown by the evidence, but it must include "sufficient facts in evidence upon which an expert opinion can be based." Thompsonv. Jarrell, 460 So.2d 148 (Ala. 1984). A trial court's ruling regarding a hypothetical question will not be disturbed on appeal absent a showing of abuse of discretion. Harper v.Baptist Medical Center-Princeton, 341 So.2d 133 (Ala. 1976).
The trial court found that the plaintiffs' attorney attempted to incorporate medical records in the hypothetical which were not introduced into evidence. It also found that the hypothetical did not contain sufficient facts. We find no abuse of discretion in the trial court's sustaining of the defendants' objection to the hypothetical questions. We also note that the plaintiffs were ultimately successful in posing *Page 117 
appropriate hypothetical questions to their expert and that testimony in response to those questions was presented to the jury.
The fourth issue presented is whether the judge's instructions on duty to inform of alternative treatments and on informed consent, or his failure to instruct the jury on the issue of fraud, was prejudicial error.
The appellants contend that the trial court's charge on varying methods of treatment and on informed consent were improper and misleading. They also contend that the court's instruction with regard to the effect of obtaining consent by false or fraudulent misrepresentations or concealing or withholding information were improper.
The trial court charged the jury as follows:
 "I charge you that medicine is not an exact science. Members of the medical profession are allowed to have within certain bounds varying opinions as medicine, as I said, is not an exacting science. However — an exact science. However there is — excuse me, however, where there is more than one accepted alternative course of action or treatment that a physician or surgeon may reasonably take that would be recognized by the profession as proper and in keeping with the required standard of care then within these bounds a physician is allowed to use his judgment in pursuing a given course of treatment where there are two or more recognized acceptable courses of treatment. He may do that so long as his actions are in keeping with the standard of care that is required by the law. Thus, where there are various recognized methods of treatment the physician is at liberty to follow the recognized method or course of treatment which he thinks or deems to be best, although some other physician or surgeon may be of the opinion that some other method or course of treatment would have been preferable. In addition, there is no requirement in our law that a physician or surgeon should be infallible in the diagnosis or treatment of his patients. Where the proper course of treatment in a particular situation is subject to reasonable doubt a physician is not liable for an honest mistake or honest error in judgment. You should consider the judgment exercised by Dr. Kirby Bryant, Jr., in light of all the attendant circumstances at the time he acted and not judge him in retrospect or simply by the results that were obtained."
The trial court charged the jury with the following principles of law: one, that medicine is not an exact science;see, Carraway v. Graham, 218 Ala. 453, 118 So. 807 (1928), and two, that where there is more than one accepted course of action or treatment a physician is allowed to use his judgment in pursuing a given course of treatment. See, Jackson v.Burton, 226 Ala. 483, 147 So. 414 (1933); Sims v. Callahan,269 Ala. 216, 112 So.2d 776 (1959).
We are of the opinion that the jury charges set forth above were not confusing. They were correct statements of law, applicable under the facts of this case, as those facts were presented to the jury.
One of the issues raised by appellants at the trial was the question of whether "informed consent" was obtained by Dr. Bryant prior to the operation. In Fain v. Smith,479 So.2d 1150, at 1152 (Ala. 1985), this Court cited the following standard against which a physician is to be judged on the issue of informed consent:
 "[W]hether the physicians had disclosed all of the material risks of the procedure was a factual issue to be resolved by the jury, and . . . the test for the determination of that issue was a professional one, i.e., whether the physicians had disclosed all the risks which a medical doctor practicing in the same field and in the same community would have disclosed. Expert testimony is required to establish what the practice is in the general community. This was supplied in this case."
The Fain case expressly adopted the "objective standard" approach to the issue of the informed consent doctrine. This *Page 118 
approach asks the jury to determine "what a prudent person in the patient's position would have decided if adequately informed of all significant perils." Fain v. Smith, at 1154. The trial court charged the jury as to informed consent as follows:
 "The issue is not one that involves knowledge common to the average person. The question is not what information you, yourself, would relate to a patient under the circumstances in this case. The question must be one upon which expert testimony is considered. The question must be decided — the question that must be decided — excuse me, the question must be decided upon what a reasonably prudent physician in the same general line of practice and in the same neighborhood would have disclosed to the plaintiffs in regard to the treatment recommended, its risks and complications and results."
The Fain decision makes it clear that a physician is not required to inform the patient of each and every risk involved in a particular procedure. The physician must inform the patient of the "significant perils." As noted above, the determination of whether informed consent was obtained is a question of fact for the jury. The charge to the jury by the trial court in this case fully and adequately explained the "objective standard" of informed consent.
The jury had before it all of the facts of the case with regard to the information that Dr. Bryant provided to Arlen Otwell and his family. The jury also had before it the testimony and evidence with regard to what knowledge Dr. Bryant had before, during, and after the surgery. The testimony regarding when and where this information was passed on to Arlen Otwell and his family was also given to the jury. The jury was provided with expert medical testimony on the issue of informed consent. As noted above, the question of informed consent is a question of fact for the jury's consideration. The jury in this case had all the information before it necessary to make that determination of fact. The jury determined, as a matter of fact, that informed consent was obtained by Dr. Bryant from Arlen Otwell and Mr. Otwell's family.
Appellants argue that the portion of the court's charge to the jury with regard to the standard of care under circumstances in which a physician "discovers conditions not reasonably foreseen before the operation and which necessitate further or different treatment in order to protect and preserve the patient's life or health . . ." was inappropriate. This was an appropriate charge in light of the testimony in this case. Dr. Bryant testified that the tumor that he found during the operation was more extensive than he had first thought. Dr. Bryant also testified that, in his opinion, the tumor had to be removed during the operation in an effort to save Mr. Otwell's life. Under these circumstances the charge by the trial court, which is a proper statement of law, was appropriate.
The appellants contend that the charge to the jury should have contained instructions regarding false or fraudulent misrepresentations by Dr. Bryant to Arlen Otwell and his family. There was no evidence presented at trial that Dr. Bryant made any false or fraudulent representations. It appears from plaintiffs' brief that the sole basis for their assertions in this regard is the fact that no definitive pathological diagnosis was made prior to the surgery; however, Dr. Bryant testified that he did have a clinical diagnosis prior to that operation. In their brief, plaintiffs seem to imply that a physician cannot have a diagnosis without a definitive pathological report. This is simply not the case. The evidence was that Dr. Bryant informed the patient and the family prior to the operation that it was his opinion that Mr. Otwell was suffering from sarcoma. The evidence was uncontroverted that this was, in fact, Dr. Bryant's opinion at that time. In order to make a case of fraud against Dr. Bryant, there would have to be evidence that Dr. Bryant informed the family that Arlen Otwell had sarcoma when, in fact, Dr. Bryant knew that he did not. In the alternative, the appellants would have *Page 119 
to show that Dr. Bryant told the patient and his family that there was a definitive pathological diagnosis when there was none. There was no testimony tending to prove either of these scenarios. In fact, the evidence was clear that Dr. Bryant at all times kept the family and patient fully informed of his opinions and knowledge.
The final issue for this Court's consideration is whether the trial judge erred when he refused to recuse himself from the trial of this case.
The Honorable Samuel Monk apprised all counsel that his brother-in-law was a defendant in a civil suit in which Carl Robinson, one of the counsel for plaintiffs in this case, was the attorney for the plaintiff. The plaintiffs discussed this matter with the clients and filed a motion to recuse. The trial court denied this motion.
Canon 3 (C), Canons of Judicial Ethics, provides:
"C. Disqualification:
 "(1) A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned, including but not limited to instances where:
 "(a) He has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
 "(b) He served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer in the matter, or the judge or such lawyer has been a material witness concerning it."
Under Canon 3 (C) a heavy burden is placed on any party attempting to establish that recusal is required. In Miller v.Miller, 385 So.2d 54 (Ala.Civ.App. 1980), cert. denied,385 So.2d 56 (Ala. 1980), the Court of Civil Appeals states:
 "Recusal is required where facts are shown which make it reasonable for members of the public, or party, or counsel opposed to question the impartiality of the judge. Wallace v. Wallace, Ala.Civ.App., 352 So.2d 1376 (1977). However, recusal is not required by mere accusation of bias unsupported by substantial fact. Taylor v. Taylor, Ala.Civ.App., 359 So.2d 395
(1978)." (Emphasis supplied.), at 55.
In the case of Taylor v. Taylor, 387 So.2d 849 (Ala.Civ.App. 1980), overruled on other grounds, 455 So.2d 863 (Ala. 1984), the court noted that "the party seeking recusal must come forward with evidence establishing the existence of bias or prejudice."
In the instant case, the appellants provide no evidence to establish the bias or prejudice on the part of Judge Samuel Monk. To the contrary, the evidence is clear that Judge Monk considered his position as trial judge in light of the suit against his brother-in-law and came to the conclusion that he could fairly and impartially sit as judge in this cause. The propriety of this decision is borne out by the trial record. It is clear that Judge Monk acted impartially throughout the trial and provided all parties with a fair chance to provide testimony and argument to the jury in this cause. We are of the opinion that the trial judge did not err when he refused to recuse himself from the trial of this case.
The appellees filed a motion to strike certain portions of the reply brief of the appellants. In support of this motion, the appellees argue that the reply brief attempts to incorporate facts and material that are not contained in the record on appeal, in violation of the decision of this Court set forth in Note 1 in Lowe v. East End Memorial Hospital Health Centers, 477 So.2d 339 (Ala. 1985). We agree. The motion to strike is granted.
The judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and SHORES, ADAMS, HOUSTON, and STEAGALL, JJ., concur.
JONES, ALMON, and BEATTY, JJ., not sitting. *Page 120