544 So.2d 863 (1989)
Wilbur B. NOLEN II
v.
Mark B. PETERSON and John C. Wicks.
87-446.
Supreme Court of Alabama.
January 13, 1989.
Rehearing Denied April 28, 1989.
*864 Jerry Knight of Hardwick, Knight & Haddock, Decatur, for appellant.
W.J. McDaniel and Robert S.W. Given of McDaniel, Hall, Conerly & Lusk, Birmingham, and J. Michael Broom of Bell, Richardson, Herrington, Wilmer, Sparkman & Shepard, Huntsville, for appellee Mark B. Peterson.
G.R. Trawick and Thomas B. Klinner, Montgomery, for appellee John C. Wicks, M.D.
JONES, Justice.
This appeal presents two issues: 1) Whether the trial court abused its discretion by refusing to consider expert testimony filed on the date of a summary judgment hearing as opposed to being filed prior to the day of hearing, pursuant to Rule 56(c), A.R.Civ.P., where the trial court granted the plaintiff's earlier request for a continuance because his original counsel had withdrawn from the case, and where the plaintiff had employed new counsel two days before the hearing; and 2) whether the lack of "informed consent" is excused, as a matter of law, in the context of a medical malpractice claim by a plaintiff who has been involuntarily civilly committed to a mental health facility and whose condition has been diagnosed as manic depressive. We reverse and remand.
The complaint alleges that the plaintiff suffered permanent physical injury (a pseudo-Parkinsonian disease known as "tardive lingual and oralfacial dyskinesias"), resulting from the prescription for and administration to him of two drugs. The plaintiff was confined in the North Alabama Regional Hospital on two separate occasions. On the first occasion he was attended by defendant Dr. Mark Peterson, who prescribed the drug Prolixin Decanoate, and on the second occasion by defendant Dr. John Wicks, who prescribed Mellaril. In the summary judgment posture of the case, it is conceded that the plaintiff's physical condition is consistent with a known potential side effect of these two drugs. Further, the defendants do not contend, in their affidavits supporting the motion for summary judgment, that the applicable standard of care relieved them from obtaining the patient's "informed consent," but that they did in fact inform Nolen of the potential risks.
The defendants' motions for summary judgment were granted on two separate grounds: 1) That the plaintiff's counter-affidavits were untimely filed (being filed on the day of the hearing and not at least one day before the hearing); and, 2) that, as a matter of law, the plaintiff is not entitled to maintain a medical malpractice claim based on the "informed consent" doctrine in the context of his involuntary commitment to a mental health facility pursuant to a civil proceeding.
Because Nolen must prevail on the procedural issue (whether his affidavits in opposition *865 to the motions for summary judgment were timely filed), or else the substantive "informed consent" issue will be declared moot, we first address the "timely filing" issue. A detailed sequence of events will be helpful:
June 17, 1985Nolen's complaint filed by his first lawyer in Jefferson County.
October 10, 1985Defendant drug company's motion to dismiss granted
May 1986Nolen's first lawyer withdraws
June 12, 1986Remaining defendants' motions to transfer to Morgan County granted
May 1986 to November 1986Nolen fails to obtain new lawyer
November 1986Nolen hires new lawyer
April 1987Second lawyer withdraws
April 1987 to December 8, 1987Nolen fails to obtain new lawyer
August 18, 1987case set for trial, but continued on Nolen's request for time to retain lawyer
November 18, 1987defendants file motions for summary judgment
November 20, 1987defendant Peterson supplements motion for summary judgment
November 24, 1987defendant Wicks supplements motion for summary judgment
November 30, 1987case set for trial, but continued at Nolen's request
December 1, 1987all parties given notice of hearing on summary judgment motions set for December 10
December 8, 1987Nolen retains present lawyer
December 10, 1987Immediately before hearing, Nolen serves motion for continuance and affidavits in response to motions for summary judgment. Following hearing, motions for summary judgment granted.
The pertinent portions of the December 10 hearing transcript read as follows:
"MR. TRAWICK: Your Honor, I represent Dr. Wicks, and we would request that the court exclude the affidavit of Dr. Wilkerson filed by the plaintiff as not being timely filed in compliance with Rule 56. It was not filed the day before the hearing; it was filed the day of the hearing. It should not be considered by the court.
"MR. BROOM: We would also join in that motion on behalf of Dr. Peterson.
"....
"MR. KNIGHT: Judge, in view of that, I would call the court's attention to Rule 1 of the Alabama Rules of Civil Procedure, and would point out that the rules ... were enacted for purposes of any party litigant being given his day in court, that the case be tried on the merits, and that it not be bounced out of court on technicalities. And in view of that objection they are raising, we would move to continue the motions for summary judgment in order to cure that technical objection based on tardiness.
"THE COURT: I am not going to continue this case.... Any other arguments?
[At this point, arguments were made by all parties regarding the issues of 1) informed consent; and, 2) immunity of the defendant doctors as state employees.]
"THE COURT: I am having a little trouble with that rule of informed consent, applying that rule to an involuntary commitment of a person who is mentally ill. I don't see how in the world a treating psychiatrist could be held to such a rule as that, and I don't believe they are. I am going to grant the motions for summary judgment on the two theories, one on Rule 56 and the other on the issue of informed consent, in that there is no requirement for an informed consent in an involuntary commitment proceeding."
The defendants rely heavily upon our case of Johnson v. Allstate Ins. Co., 505 So.2d 362 (Ala.1987), and the Fifth Circuit Court of Appeals case of Farina v. Mission Inv. Trust, 615 F.2d 1068 (5th Cir.1980), for the proposition that the trial court's exercise of discretion in disallowing untimely filed Rule 56(c) affidavits will be reversed only for abuse of discretion. We agree that this is the appropriate standard *866 of review. Our review, pursuant to that standard, however, is influenced by the spirit of Rule 1's admonition in favor of an adjudication on the merits of every case. Just as in the case of a default judgment pursuant to Rule 55, a discretionary summary judgment that ends the litigation in favor of the defendant, because of the plaintiff's failure of strict compliance with Rule 56(c), must be reviewed in light of the totality of the circumstances of each case.
When so reviewed, we find here a set of circumstances materially different from those in Johnson and Farina. The reports of those earlier cases (including the case of State v. Norman Tie & Lumber Co., 393 So.2d 1022 (Ala.Civ.App.1981), fail to disclose any factual basis for a Rule 6(b) "excusable neglect" finding. Here, Nolen's "retention of a lawyer" problem began when his Birmingham lawyer apparently lost interest in pursuing the litigation upon the transfer of the case from Jefferson to Morgan County. His second Birmingham lawyer withdrew after about five months, all of which happened more than seven months before the defendants filed their motions for summary judgment.
Although the case was set for trial on November 30, 1987, and the record reflects that it was continued at Nolen's request, the record also reflects that the defendants' motions for summary judgment (last supplemented on November 24) were pending and awaiting disposition. Indeed, the following day (December 1), the trial court, obviously recognizing that the November 30 trial date was premature, scheduled a hearing on the summary judgment motions for December 10.
From this point forward, any lack of diligence with respect to the filing of appropriate responses to the pending summary judgment motions must fall upon Nolen personally for his failure to retain counsel earlier than December 8, and not upon Nolen's newly employed counsel. With only one full day between his employment date and the date of the hearing, Nolen's lawyer prepared a motion for a continuance, an affidavit by Nolen, and an affidavit by Nolen's personal physician for filing and serving before 9:00 a.m. on the date of the summary judgment hearing. Under the totality of these circumstances, we are not prepared to conclude, as a matter of law, that Nolen's delay in retaining counsel is so inexcusable as to justify the action of the trial court in refusing to accept and consider the affidavits offered by Nolen in opposition to the motions for summary judgment.
Moreover, the motion for a one-day continuance (so as to comply with the "prior to the hearing" language of Rule 56(c)), absent the trial court's willingness to accept the plaintiff's affidavits on December 10, should have been granted, as a matter of law. When the trial court, acting on December 1, scheduled a summary judgment hearing for December 10, this notice period fell one day short of the ten-day requirement of Rule 56(c). Hightower & Co. v. United States Fidelity & Guaranty Co., 527 So.2d 698 (Ala.1988). Thus, the trial court could have cured this defect either by accepting and considering the affidavits as filed on December 10, or by granting the requested one-day continuance. Failing to accept either option, the trial judge abused his discretion. Furthermore, considering the nature of the evidence contained in the proffered affidavits, we find that no undue prejudice would result to the defendants.
Whether that error requires reversal depends upon our answer to the substantive "informed consent" issue: Whether the trial court erred in entering summary judgment in favor of the defendants in light of the plaintiff's affidavits in opposition to the summary judgment motions. The argument section of each of the appellees' briefs relating to this issue consists of a single paragraph. We quote from Dr. Wicks's brief:
"The probate court specifically orders the Department to provide treatment to the involuntarily civilly committed patient for his mental illness. The Appellant argues that, even though he was properly committed to the Department for treatment of his mental illness, he nonetheless has the right to refuse the treatment from the Department that is *867 required by the Court Order. The argument of the Appellant has no basis in logic, common sense, or the law in Alabama. The Appellee submits that the argument of the Appellant cannot be sustained by the record before this Honorable Court."
We quote now from Dr. Peterson's brief:
"Defendant Peterson contends that the trial judge was correct in his application of Alabama law regarding the involuntary commitment of mental patients and their subsequent treatment. Defendant Peterson joins in and adopts by reference the arguments of co-appellee John C. Wicks regarding this issue. This defendant would state, however, that said issue is properly superseded by the trial court's refusal to consider the untimely affidavits filed by the plaintiff in this case."
We set out the full content of the defendants' arguments on the "informed consent" issue to demonstrate that we have been cited to no case, and our independent research has disclosed none, that support the proposition that, absent a finding of incompetency of the patient or an emergency situation, the involuntary commitment to a mental institution necessarily and as a matter of law excuses medical practices and procedures below the standard recognized and accepted by the medical community. To the contrary, several cases have addressed the issue; and, without exception, every case has repeated the proposition that a person involuntarily committed to a mental hospital is not ipso facto barred from the invocation of the "informed consent" doctrine.
Federal Courts of Appeals have held unequivocally that a mental patient confined involuntarily to a mental facility maintains a constitutionally protected right to reject potentially harmful antipsychotic medications. Project Release v. Prevost, 722 F.2d 960 (2d Cir.1983); Rennie v. Klein, 720 F.2d 266 (3d Cir.1983); and Bee v. Greaves, 744 F.2d 1387 (10th Cir.1984). See, also, Johnson v. Silvers, 742 F.2d 823 (4th Cir.1984).
State courts have treated this issue in the context of voluntary as well as involuntary commitments and in the context of statutory regulations promulgating guidelines for such treatment. For example, see People v. Medina, 705 P.2d 961 (Colo.1985); Aiken v. Clary, 396 S.W.2d 668 (Mo.1965); In the Matter of Guardianship of Roe, 383 Mass. 415, 421 N.E.2d 40 (1981); and, Rogers v. Commissioner of the Department of Mental Health, 390 Mass. 489, 458 N.E.2d 308 (1983).
Absent any such statutory guidelines in Alabama, the standard of conduct incumbent upon the medical practitioner is determined by the esoteric considerations established and adhered to by the medical community. The principles set forth in Fain v. Smith, 479 So.2d 1150 (Ala.1985), and Otwell v. Bryant, 497 So.2d 111 (Ala.1986), are sufficient to govern the trial of the cause on remand.
REVERSED AND REMANDED.
TORBERT, C.J., and ALMON, BEATTY and HOUSTON, JJ., concur.

ON APPLICATION FOR REHEARING
JONES, Justice.
APPLICATION FOR REHEARING OVERRULED.
HORNSBY, C.J., and ALMON, SHORES, HOUSTON and KENNEDY, JJ., concur.
MADDOX, J., dissents.
MADDOX, Justice (dissenting).
I did not participate in the original decision in this case, and two members of the majority who joined in the opinion are no longer on the Court.
I would grant the rehearing in this case and substantially modify the original opinion, because I am of the opinion that it incorrectly states the law of this State when it states "that a mental patient confined involuntarily to a mental facility maintains a constitutionally protected right to reject potentially harmful antipsychotic medications," citing Project Release v. Prevost, 722 F.2d 960 (2d Cir.1983); Rennie v. Klein, 720 F.2d 266 (3rd Cir.1983); Bee v. *868 Greaves, 744 F.2d 1387 (10th Cir.1984), cert. denied, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985); and Johnson v. Silvers, 742 F.2d 823 (4th Cir.1984).
Unfortunately, the opinion does not address the fact that in each of those cited federal cases, the court recognized that in qualified circumstances an individual's constitutionally protected right to reject potentially harmful antipsychotic medications can be overruled by a compelling state interest in protecting and treating the individual. The Supreme Court of the United States, in Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), concluded that under certain circumstances legitimate state interests can override the rights of the individual:
"In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance `the liberty of the individual' and `the demands of an organized society.' Poe v. Ullman, 367 U.S. 497, 542 [81 S.Ct. 1752, 1776, 6 L.Ed.2d 989] (1961) (Harlan, J., dissenting). In seeking this balance in other cases, the Court has weighed the individual's interest in liberty against the State's asserted reasons for restraining individual liberty. In Bell v. Wolfish, 441 U.S. 520 [99 S.Ct. 1861, 60 L.Ed.2d 447] (1979), for example, we considered a challenge to pretrial detainees' confinement conditions. We agreed that the detainees, not yet convicted of the crime charged, could not be punished. But we upheld those restrictions on liberty that were reasonably related to legitimate government objectives and not tantamount to punishment. See id., at 539 [99 S.Ct. at 1874]. We have taken a similar approach in deciding procedural due process challenges to civil commitment proceedings. In Parham v. J.R., 442 U.S. 584 [99 S.Ct. 2493, 61 L.Ed.2d 101] (1979), for example, we considered a challenge to state procedures for commitment of a minor with parental consent. In determining that procedural due process did not mandate an adversarial hearing, we weighed the liberty interest of the individual against the legitimate interest of the State, including the fiscal and administrative burdens additional procedures would entail. Id., at 599-600 [99 S.Ct. at 2502-03].
"Accordingly, whether respondent's constitutional rights have been violated must be determined by balancing his liberty interests against the relevant state interests. If there is to be any uniformity in protecting these interests, this balancing cannot be left to the unguided discretion of a judge or jury. We therefore turn to consider the proper standard for determining whether a State adequately has protected the rights of the involuntarily committed mentally retarded."
457 U.S. at 320-21, 102 S.Ct. at 2460-61 ("procedural" emphasized in original; other emphasis added).
The Supreme Court concluded that Courts should not "`second-guess the expert administrators on matters on which they are better informed,'" and that "[a] decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision of such a judgment." 457 U.S. at 323, 102 S.Ct. at 2462.
This Court's reliance on the decisions of Otwell v. Bryant, 497 So.2d 111 (Ala.1986), and Fain v. Smith, 479 So.2d 1150 (Ala. 1985), to govern this cause on remand is not well founded. In both Otwell and Fain, patients in a regular hospital brought charges against physicians, alleging that the physicians had negligently failed to inform them of all the significant perils of their proposed treatment. In Fain, this Court examined extensively the standard for recovery in "informed consent" cases. The Court noted that there must first be testimony that a patient should have been informed by a physician of additional risks attendant to medical procedures and, further, that a jury must use the "objective standard" test to decide if lack of informed consent supports a finding of causation in each case. In Fain, supra, at 1156, this Court stated the standard:
*869 "Did the defendants adequately inform the patient of the material risk involved and, if not, did the patient's uninformed consent cause his injury?" This objective standard approach asked the jury to determine what a prudent person in the patient's position would have decided if adequately informed of all significant perils.
These two decisions do not consider or take into account the involuntary commitment of a person adjudicated mentally ill, dangerous to himself and others, and in need of treatment. These incompetent individuals cannot be equated with "prudent persons"; they have been involuntarily committed because they have been judicially determined to lack the capacity to make rational decisions regarding treatment. To state that psychiatrists in the State of Alabama working at state mental hospitals will be held to a negligence standard based upon what a prudent person in the patient's position would have decided if "adequately informed of all significant perils" is clearly erroneous. A jury cannot decide what a prudent mentally ill schizophrenic patient would decide if informed of all the potential perils of antipsychotic medications, because there is no such prudent patient. The application in this case of the informed consent doctrine from the Fain and Otwell decisions fails to address the issues presented, and establishes a dangerous precedent.