I did not participate in the original decision in this case, and two members of the majority who joined in the opinion are no longer on the Court.
I would grant the rehearing in this case and substantially modify the original opinion, because I am of the opinion that it incorrectly states the law of this State when it states "that a mental patient confined involuntarily to a mental facility maintains a constitutionally protected right to reject potentially harmful antipsychotic medications," citingProject Release v. Prevost, 722 F.2d 960 (2d Cir. 1983); Renniev. Klein, 720 F.2d 266 (3rd Cir. 1983); Bee v. *Page 868 Greaves, 744 F.2d 1387 (10th Cir. 1984), cert. denied,469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985); and Johnson v.Silvers, 742 F.2d 823 (4th Cir. 1984).
Unfortunately, the opinion does not address the fact that in each of those cited federal cases, the court recognized that in qualified circumstances an individual's constitutionally protected right to reject potentially harmful antipsychotic medications can be overruled by a compelling state interest inprotecting and treating the individual. The Supreme Court of the United States, in Youngberg v. Romeo, 457 U.S. 307,102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), concluded that under certain circumstances legitimate state interests can override the rights of the individual:
 "In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance 'the liberty of the individual' and 'the demands of an organized society.' Poe v. Ullman, 367 U.S. 497, 542 [81 S.Ct. 1752, 1776, 6 L.Ed.2d 989] (1961) (Harlan, J., dissenting). In seeking this balance in other cases, the Court has weighed the individual's interest in liberty against the State's asserted reasons for restraining individual liberty. In Bell v. Wolfish, 441 U.S. 520
[99 S.Ct. 1861, 60 L.Ed.2d 447] (1979), for example, we considered a challenge to pretrial detainees' confinement conditions. We agreed that the detainees, not yet convicted of the crime charged, could not be punished. But we upheld those restrictions on liberty that were reasonably related to legitimate government objectives and not tantamount to punishment. See id., at 539 [99 S.Ct. at 1874]. We have taken a similar approach in deciding procedural due process challenges to civil commitment proceedings. In Parham v. J.R., 442 U.S. 584 [99 S.Ct. 2493, 61 L.Ed.2d 101] (1979), for example, we considered a challenge to state procedures for commitment of a minor with parental consent. In determining that procedural due process did not mandate an adversarial hearing, we weighed the liberty interest of the individual against the legitimate interest of the State, including the fiscal and administrative burdens additional procedures would entail. Id., at 599-600 [99 S.Ct. at 2502-03].
 "Accordingly, whether respondent's constitutional rights have been violated must be determined by balancing his liberty interests against the relevant state interests. If there is to be any uniformity in protecting these interests, this balancing cannot be left to the unguided discretion of a judge or jury. We therefore turn to consider the proper standard for determining whether a State adequately has protected the rights of the involuntarily committed mentally retarded."
457 U.S. at 320-21, 102 S.Ct. at 2460-61 ("procedural" emphasized in original; other emphasis added).
The Supreme Court concluded that Courts should not " 'second-guess the expert administrators on matters on which they are better informed,' " and that "[a] decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision of such a judgment." 457 U.S. at 323, 102 S.Ct. at 2462.
This Court's reliance on the decisions of Otwell v. Bryant,497 So.2d 111 (Ala. 1986), and Fain v. Smith, 479 So.2d 1150
(Ala. 1985), to govern this cause on remand is not well founded. In both Otwell and Fain, patients in a regular hospital brought charges against physicians, alleging that the physicians had negligently failed to inform them of all the significant perils of their proposed treatment. In Fain, this Court examined extensively the standard for recovery in "informed consent" cases. The Court noted that there must first be testimony that a patient should have been informed by a physician of additional risks attendant to medical procedures and, further, that a jury must use the "objective standard" test to decide if lack of informed consent supports a finding of causation in each case. In Fain, supra, at 1156, this Court stated the standard: *Page 869 
"Did the defendants adequately inform the patient of the material risk involved and, if not, did the patient's uninformed consent cause his injury?" This objective standard approach asked the jury to determine what a prudent person in the patient's position would have decided if adequately informed of all significant perils.
These two decisions do not consider or take into account theinvoluntary commitment of a person adjudicated mentally ill,dangerous to himself and others, and in need of treatment.
These incompetent individuals cannot be equated with "prudent persons"; they have been involuntarily committed because they have been judicially determined to lack the capacity to make rational decisions regarding treatment. To state that psychiatrists in the State of Alabama working at state mental hospitals will be held to a negligence standard based upon what a prudent person in the patient's position would have decided if "adequately informed of all significant perils" is clearly erroneous. A jury cannot decide what a prudent mentally ill schizophrenic patient would decide if informed of all the potential perils of antipsychotic medications, because there is no such prudent patient. The application in this case of the informed consent doctrine from the Fain and Otwell decisions fails to address the issues presented, and establishes a dangerous precedent.