This medical malpractice case was filed by Sheila K. Coots against Dr. John B. Isbell III, Dr. Blake Isbell, and Isbell Clinic, P.A., in DeKalb County, Alabama. Mrs. Coots's claim was based on the alleged negligence of the defendants in failing to *Page 140 
diagnose a malignant tumor in her rectum while she was an obstetrical patient. Mrs. Coots died prior to trial, and her husband, Daniel G. Coots, was made administrator of her estate and was substituted as the proper party plaintiff. The case was tried before a jury during the week of October 17, 1988, and resulted in a verdict for the defendants.
The plaintiff filed a motion for a new trial on October 26, 1988, alleging juror misconduct and deprivation of complete cross-examination of defendants' medical expert witnesses, and alleging that the verdict was against the weight of the evidence. A hearing was held before the trial judge on December 21, 1988, in which testimony was taken from witnesses and by submission of affidavits. The motion for a new trial was denied, and plaintiff appealed.
Mrs. Coots was an obstetrical patient of the defendants, who had delivered both of her children. It is the plaintiff's contention that during her second pregnancy (the child was delivered February 7, 1985) she was under the care of the defendants, and that while under their care she reported to them repeated episodes of rectal bleeding, abnormal abdominal pressure, and severe constipation. The records of the Isbell Clinic and the Baptist Medical Center in Fort Payne, Alabama, indicate no such complaints, however, until six weeks after the delivery of the second child.
In May 1985, Mrs. Coots saw a general surgeon about her continued rectal bleeding. She was diagnosed by Dr. Alex Walker as having a rectal tumor. The tumor was removed May 30, 1985; she died on January 7, 1987.
At the trial, expert testimony was presented by both sides on the issue of proper obstetrical care and the use of rectal examinations; the grade and size of the tumor; and the likelihood of Mrs. Coots's survival with earlier detection of the tumor. The factual issue of whether Mrs. Coots had made complaints to the defendants concerning rectal problems prior to the birth of her second child was contested. Although Mrs. Coots had died before trial, a videotape of her testimony was presented to the jury. The case was submitted to the jury in the early afternoon of October 20, 1988. The jury was sent home at approximately 6:30 p.m. and returned to deliberate the next morning. The jury returned a verdict after 45 minutes of deliberation on October 21, 1988.
Two issues are presented on appeal.
 I.
The first question is whether the trial court erred in denying the plaintiff's motion for a new trial based on allegations of juror misconduct. The plaintiff contends that after the trial one of the jurors, Eldon Lanier, told plaintiff's attorneys that during the overnight recess he had contacted a physician who was not a witness in the case to inquire about the standard of care to be used in examining an obstetrical patient.
We examined the question of when juror misconduct justifies the granting of a new trial in Whitten v. Allstate Ins. Co.,447 So.2d 655 (Ala. 1984), where we stated the rule to be as follows:
 "Juror misconduct will justify a new trial when it indicates bias or corruption, or when the misconduct affected the verdict, or when from the extraneous facts prejudice may be presumed as a matter of law."
447 So.2d at 658. In determining that a new trial should have been granted in Whitten, the Court reviewed the affidavits and testimony in the case and determined that the jurors were prejudiced by the unauthorized viewing of the scene of the accident and by the subsequent discussions about those views. In each of the cases in which we have held that the trial court erred in failing to grant a new trial, there has been a common factor — the existence of juror misconduct that could have affected the verdict. See Hallmark v. Allison, 451 So.2d 270
(Ala. 1984); Jones v. McMonigal, 409 So.2d 1381 (Ala. 1982);Nichols v. Seaboard Coastline Ry., 341 So.2d 671 (Ala. 1977). *Page 141 
The trial judge in this case held a hearing on plaintiff's motion for a new trial on December 21, 1988. At that hearing, testimony was taken from two jurors, as well as two of the attorneys for the plaintiff. In addition, affidavits were submitted by the defense from other jurors who sat on the case, as well as from two doctors named "Wood." The trial judge denied the motion for new trial on January 3, 1989. His order, which contained findings of fact, read as follows:
"Ruling on Motion For New Trial
 "The plaintiff has filed a motion for a new trial. The primary ground asserted in the motion is that one or more jurors consulted physicians during an overnight recess in the jury's deliberation and obtained information about the standard of care for examining a pregnant woman, such standard being one of the issues in the case.
 "A hearing on the motion was conducted before the court on December 21, 1988. The plaintiff called two jurors, Eldon H. Lanier and C.O. Hulsey, who were questioned about this assertion.
 "Juror Lanier denied conferring with any physician about the case and, more specifically, denied conferring with a Dr. Wood in Huntsville. Lanier testified that he talked with two of plaintiff's counsel, Mr. Cooper and Mr. Hutcheson, after the verdict was returned, but says he did not tell them that he had conferred with Dr. Wood about the case. He testified that Attorneys Cooper and Hutcheson prepared an affidavit for his signature which stated that he had consulted with Dr. Wood, but that he refused to sign it. Lanier testified that his verdict was not influenced by anyone or anything outside the trial and that it was based upon the law and the evidence presented during the trial.
 "Juror Hulsey testified that he did not recall Mr. Lanier saying he had discussed the case with Dr. Wood but did overhear Lanier telling plaintiff's counsel after the trial that his daughter once worked for Dr. Wood in Huntsville. Hulsey testified that he did not recall any mention during deliberations that a juror had consulted a physician about the case. He testified that his verdict was based upon the evidence and the law presented during the trial.
 "Attorneys Cooper and Hutcheson, while continuing to represent the plaintiff, took the witness stand on their client's behalf and gave testimony about conversations they had with jurors Lanier and Hulsey after the trial. They testified that Lanier told them that during the overnight recess in the jury's deliberation he had called a Dr. Wood in Huntsville and asked him what acceptable procedure was for examining a pregnant woman, and that what Dr. Wood told him helped 'settle his mind' about the case. Attorney Cooper testified also that juror Hulsey told him in a telephone conversation after the trial that one of the jurors, whose name he could not remember, told the jury during deliberations that he had talked to a physician about the case and that this physician said the defendants had used proper procedure in their examination.
 "Cooper and Hutcheson testified that they prepared a statement for Lanier to sign stating that he had talked to Dr. Wood about the case but Lanier objected to the use of Dr. Wood's name in the affidavit and refused to sign it. After Dr. Wood's name was removed from the affidavit, Lanier still refused to sign it.
 "Defendants objected to Attorneys Cooper and Hutcheson's testimony on the ground that they were barred from being both counsel and witness in the case. The court reserved ruling on the objection and permitted the testimony subject to its being excluded once the court ruled on the objection.
 "It is not necessary, however, for the court to rule upon the admissibility of Attorneys Cooper and Hutcheson's testimony, for even if it is admitted and accorded great weight, it is not conclusive on the inquiry. The evidence as a whole convinces the court that juror Lanier did not consult with Dr. Wood in spite of *Page 142 
statements he may have made that he did.
 "The court inquired at the hearing as to why it had not been provided the testimony of Dr. Wood, and counsel for both sides acknowledged that they had been unable to locate a Dr. Wood in the Huntsville area. Counsel for the defendants requested, however, that they be permitted to submit the affidavit of Dr. Wood within seven days if they should locate him. This request was granted, and the defendants' counsel has subsequently submitted the affidavits of Dr. W. Graham Wood and Dr. Robert V. Wood.
 "The affidavit of Dr. W. Graham Wood states that he presently practices medicine in Newport Beach, California, but he practiced in Madison County, Alabama, from 1973 to 1983. He states that in October, 1988, the time of the trial, he resided in Newport Beach, and was not contacted by telephone or otherwise by Eldon Lanier and that he does not know Eldon Lanier.
 "Dr. Robert V. Wood, in his affidavit, states that he presently practices medicine in Huntsville, Alabama, where he has specialized in pediatrics since 1962. He states that at no time during October, 1988, was he contacted by telephone or otherwise by Eldon Lanier.
 "The testimony of these two witnesses and the reluctance of juror Lanier in his conversations with Cooper and Hutcheson to have Dr. Wood's name involved are consistent with the conclusion that Lanier did not talk with a Dr. Wood.
 "The court finds that the evidence is insufficient to sustain the plaintiff's allegation of juror misconduct and insufficient to show that extraneous facts were considered by the jury. The court also finds that the other grounds asserted in the plaintiff's motion for new trial are without merit.
 "Accordingly, IT IS ADJUDGED AND DECREED that the motion for new trial is denied.
"DATED JANUARY 3, 1989.
"/s/ Randall L. Cole
"Circuit Judge"
It is well established that a ruling on a new trial motion rests within the sound discretion of the trial judge. The exercise of that discretion carries with it a presumption of correctness, which will not be disturbed by this Court unless some legal right is abused and the record plainly and palpably shows the trial judge to be in error. Hill v. Sherwood,488 So.2d 1357 (Ala. 1986). The trial judge had the unique opportunity to view the witnesses and to weigh their testimony. He made a ruling based on reasonable inferences drawn from the evidence before him.
The plaintiff relies upon a transcript that was admitted into evidence and that purports to be of a meeting between juror Eldon Lanier and attorneys Cooper and Hutcheson. In this meeting juror Lanier related that he had made contact with another doctor, as had another juror. The transcript had been typed from a tape of the meeting; although there was testimony by Cooper's legal secretary that this was an accurate transcript, the tape itself was never located and presented into evidence. During his testimony before the trial judge, juror Lanier denied making this statement.
Affidavits were presented by the defense from the foreman and five of the jurors who served on the jury panel. The affidavits are all identical in substance. The affidavit of juror Brian K. Blansit is as follows:
 "On the afternoon of October 20, 1988 the jurors were sent out to deliberate the case by Judge Cole. At that time, a vote was taken among the jurors. The count of that vote was eleven jurors in favor of the defendants and one juror was undecided. I was one of the jurors that voted in favor of the defendants at that time. The vote count remained the same until we adjourned on the afternoon of October 20.
 "On October 21, 1988 the jury reconvened. After a short discussion the one undecided juror stated that he had changed his mind and had decided to join in the verdict for the defendants. The *Page 143 
foreman then determined that the other eleven jurors were still decided in favor of the defendants and the verdict was reported to the bailiff.
 "In ruling on this case I considered only the evidence that was presented at the trial. No other evidence or facts of any kind were ever related to me during the course of the deliberations. Also, I heard no such evidence or facts related to any other member of the jury."
R. 795-96.
We have carefully examined the record in this case. The evidence is insufficient to prove that there was juror misconduct that indicates bias or corruption or that affected the verdict. Furthermore, the evidence is insufficient to find that extraneous facts were considered by the jury.
 II.
The second question presented on appeal is whether the trial court erred in not allowing plaintiff's counsel to examine medical experts on the fact that they were also insured by the defendants' professional liability carrier. In the case ofOtwell v. Bryant, 497 So.2d 111 (Ala. 1986), this Court looked at the question of "whether testimony that the defense's medical experts belonged to the same mutual liability insurance carrier should have been allowed." Id. at 113. Otwell was also a medical malpractice action against a physician and his medical group. The trial court had granted a motion in limine that prohibited questioning of medical expert witnesses with regard to the existence and source of medical malpractice insurance.
In Otwell we traced the general rule that a plaintiff may not ordinarily introduce evidence showing that the defendant has liability insurance, but recognized that the trial court has the discretion to admit evidence to show the bias, prejudice, or interest of a witness, as follows:
 "A plaintiff may not ordinarily introduce evidence showing that the defendant has liability insurance. Welborn v. Snider, 431 So.2d 1198 (Ala. 1983); Thorne v. Parrish, 265 Ala. 193, 90 So.2d 781 (1956). The appellants contend that a showing of liability insurance coverage is permissible if offered for the purpose of demonstrating bias or prejudice of a witness in favor of a particular party to the case. We recognize that the trial court has the discretion to admit evidence to show the bias, prejudice or interest of a witness, Osborne v. Cobb, 410 So.2d 396 (Ala. 1982); however, this rule applies only in certain limited situations. In Hinton Sons v. Strahan, 266 Ala. 307, 96 So.2d 426 (1957), this Court sustained the trial court's ruling allowing the introduction of evidence that a witness who testified in behalf of the defendant had a connection with the liability insurer of the defendant. The connection between the witness and the insurer was not simply that of a policyholder, as in the present case. The witness testifying in Hinton was a member of the board of directors and was employed by the liability insurer. This Court made it clear in Hinton that the witness must be an 'agent' of the insurer before interrogation about insurance coverage would be acceptable."
497 So.2d at 113.
In holding that evidence that the medical experts were insured by the same professional liability carrier was inadmissible, we wrote the following:
 "We are of the opinion that the trial court correctly determined that the testimony that the defense's experts belonged to to the same mutual liability insurance carrier was inadmissible. . . . The potential for bias on the part of any witness due to his coverage under a professional liability policy is so remote as to be virtually non-existent. When this remote potential for bias is balanced against the overwhelming prejudicial effect of allowing evidence of professional liability insurance, it becomes evident that admission of such evidence would be error."
497 So.2d at 115.
We have carefully examined the record in this case. The testimony of the medical experts reflects that the potential for bias *Page 144 
on their part was so remote as to be virtually nonexistent.
On the basis of the foregoing, the judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES, HOUSTON and KENNEDY, JJ., concur.