I quote the pertinent portion of the trial court's charge to the jury to show that it can be reasonably argued that the trial court's charge in this case could not have confused thejury:
 "With respect to a physician, in performing professional services for a patient, a physician must use such reasonable care, skill and diligence as physicians in the same general neighborhood and in the same general line of practice ordinarily have and exercise in a like case. The same general neighborhood means the national medical neighborhood of reasonably competent physicians in the same line of practice acting in the same or similar circumstances. [The majority opinion is predicated upon there being no mention of a physician's "good faith" in the performance of his or her professional duties in Ala. Code 1975, § 6-5-484. There is no definition of "same general neighborhood" in § 6-5-484. By judicial interpretation that phrase is now defined (correctly I believe) as the national neighborhood of reasonably competent physicians in the same line of practice acting in the same or similar circumstances.]
 "The treatment — the word 'treatment,' as I have and will use [it,] means this. It covers all of the steps taken to effect a cure of an injury, illness or disease. It includes examination and diagnosis, as well as the application of remedies, so it's all-inclusive.
 "Medicine is not an exact science, and a physician doesn't guarantee the success of his treatment, and he has fulfilled his duty to a patient if he prescribes a proper treatment, even though it does not produce good results.
 "In other words, a physician is not an insurer of good health. And where there are various recognized methods of treatment, a physician is at liberty to follow the recognized method of treatment which he thinks is best, although witnesses have given their opinion that some other method would have been preferable.
 "And where there are various methods of treatment, a physician is at liberty to follow the method of treatment which he thinks is proper or best, although some other physician or some other surgeon, under the circumstances, may have been under the opinion that another method or another course of treatment would have been *Page 996 preferable, so long as the treatment which is selected does not fall below the required standard of care.
 "There is no requirement under our law that the physician be infallible in his diagnosis or treatment of his patient. And where the proper course of treatment in a particular situation is subject to reasonable doubt, a physician is not liable for an honest mistake or an honest error or judgment, so long as he meets the required standard of care." (Emphasis added.)
I am not averse to abandoning or revisiting the use of the "honest mistake" or "honest error of judgment" words in a jury charge except (1) for the fact that we are departing from the doctrine of stare decisis, (2) for the reasons stated in Justice Maddox's dissent in this case, and (3) because the "honest mistake/error in judgment" charge is needed to explain the connection between Ala. Code 1975, § 6-5-484(a) (physician's standard of care) and § 6-5-484(b) (not "an insurer of successful issue of treatment or service"). I am not convinced that the existing rule of law (Otwell v. Bryant, 497 So.2d 111
(Ala. 1986)) would not be consented to today by the conscience and feeling of justice of the majority of Alabamians whose obedience is required by that rule of law. I have determined that it is only in those cases where I think the majority would not so consent that I will depart from the doctrine of staredecisis, see Southern States Ford, Inc. v. Proctor,541 So.2d 1081, 1093 (Ala. 1989) (Houston, J., concurring specially), "to the end that [the government of this state] may be a government of laws and not of men." Article III, § 43, Constitution of Alabama of 1901.
However, even if we change the law, as we evidently are doing in this case, I do not believe that the trial court's entire charge, as set out above, could have prejudiced the appellant's rights. The entire charge was as clear as clear can be, unless one is like the Francophile who would translate and transpose Antoine DeRivard's "Ce qui n'est pas clair n'est pas francais,"Discours sur l'Universalite de la Langue Francaise (1784), to "What is not French is not clear."
Our standard of review requires that we review the entirecharge to determine if there is reversible error. Treadway v.Brantley, 437 So.2d 93 (Ala. 1983); Wright v. Rowland,406 So.2d 830 (Ala. 1981); Nelms v. Allied Mills Co., 387 So.2d 152
(Ala. 1980). Rule 45 of the Rules of Appellate Procedure provides:
 "No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of misdirection of the jury [or] the giving or refusal of special charges . . ., unless
in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties." (Emphasis supplied.)
It gives very little credit to the jury system and even less to this particular jury's intelligence to say that the jury would interpret the words "good faith" and "honest error in judgment," as those words were used in the trial court's charge set out above, to mean that a physician cannot be liable if he was acting in good faith toward the patient.
I am reminded of the discussions that occurred at our constitutional convention (see Official Proceedings of the State of Alabama Constitutional Convention of 1901, Vol. II), when there was an attempt to change what is now Article I, Sec. 11, of the Constitution ("That the right to trial by jury shall remain inviolate"), which had been Article I, Sec. 12, Constitution of Alabama 1875. The proposed language was "The right of trial by jury shall be secured to all and remain inviolate; but in civil actions three-fourths of the jury may render a verdict." While all of those great men in the convention argued for the right to trial by jury, some insisted that it was necessary for the verdict to be unanimous because only 2 or 3 of the 12 jurors would be able to understand what was going on and others argued that three-fourths of the jury should render a verdict because it would be easy to bribe 1 of the 12. The *Page 997 
inviolate right to trial by jury should require the judiciary's respect for the intelligence and integrity of the jury.
I have been privileged to serve on a petit jury while serving as a Justice of this Court, and I have an even greater appreciation for the jury system for having done so.